**Rosauro QUINTERO,**
**Plaintiff–Appellant,**

v.

**KLAVENESS SHIP LINES,**
**Defendant–Appellee.**

**TORVALD KLAVENESS & CO. A/S, et al., Plaintiffs–Appellees,**

v.

**Rosauro QUINTERO and Frank SLOAN, Defendants–Appellants.**

**Nos. 89–3810, 90–3013.**

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1990.

Rehearing and Rehearing En Banc
Denied Nov. 21, 1990.

718

Frank Sloan, Covington, La., pro se.

John A. Bolles, Sharon Smith, Stephanie L. Chisholm, Terriberry, Carroll & Yancey, New Orleans, La., for defendant-appellee.

Before GEE and DAVIS, Circuit Judges, and SMITH *, District Judge.

GEE, Circuit Judge.

The central issue on appeal is whether a district court may prevent relitigation of a choice-of-law determination made pursuant to its *forum non conveniens* dismissal of a seaman's personal injury claims. We conclude that, under the facts of this case, it may do so.

In reaching this conclusion, we first hold that a district court has discretion to issue an injunction to prevent relitigation of a choice-of-law determination made pursuant to a *forum non conveniens* dismissal. Second, we hold that a *forum non conveniens* dismissal that includes a choice-of-law determination is a determination on the merits and may properly be granted with prejudice. Third, in our de novo review, we conclude that Philippine law governs this controversy. Fourth, we note that the district court did not on the facts of this case abuse its discretion by refusing to compel

answers to two disputed interrogatories. Fifth, we conclude that the district court did not abuse its discretion by determining that *forum non conveniens* dismissal was appropriate in this case. Sixth, we hold that a district court may make a choice-of-law determination while evaluating a *forum non conveniens* dismissal motion if it first determines that an adequate alternative forum is available. Finally, we conclude that the district court did not abuse its discretion by denying a motion for voluntary dismissal because we find that, under the facts of this case, loss of a federal *forum non conveniens* defense constitutes plain legal prejudice. Accordingly, we affirm the judgment of the district court.

## Background

This case began when a Filipino sailor was injured while unloading a Liberian-registered, Norwegian-owned ship docked in the Port of New Orleans. In September 1986, Rosauro Quintero filed suit against Torvald Klaveness & Co. A/S (Klaveness) in the Eastern District of Louisiana seeking damages for injuries he sustained while unloading the *M/V Barwa*.[1] In July 1987, Mr. Quintero filed a parallel suit for the same injuries in Louisiana state court, later amending his state petition to include the Barwa interests as plaintiff. In April 1988, the federal district court issued a final judgment dismissing Mr. Quintero's suit under the doctrine of *forum non conveniens*. In January 1989, our Court vacated this judgment and remanded the case with instructions that the district court reconsider its decision in light of the law as modified by *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir.1987), *vacated and remanded sub nom., Pan American World Airways, Inc. v. Lopez,* — U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 *reinstated in pertinent part,* 883 F.2d ·17 (5th Cir.1989).

---

* District Judge of the Western District of Texas, sitting by designation.

1. Klaveness managed the *M/V Barwa,* but the vessel was owned by a Liberian corporation, Barwa, Inc. Barwa, Inc. in turn was owned by four Norwegian interests A/S Otra; Harald Moller Investment A/S; Galva Limited A/S; and Gorrissen and Klaveness A/S. This opinion will refer to the four Norwegian entities that owned the *M/V Barwa* and Barwa, Inc. as the "Barwa interests."

After remand, Mr. Quintero filed a motion to dismiss his federal suit. The district court denied Mr. Quintero's motion, but later granted Klaveness's motion for *forum non conveniens* dismissal. The district court also specified that the *forum non conveniens* dismissal was with prejudice. As part of its *forum non conveniens* analysis, the district court determined that Philippine law should govern the controversy. Based on this determination, the district court granted Klaveness's request for an injunction preventing Mr. Quintero from relitigating the choice-of-law issue in his still pending Louisiana state court proceeding. Mr. Quintero appeals the district court's actions.

The real dispute on appeal is whether Mr. Quintero will be permitted to relitigate the choice-of-law issue, either in his pending state action or in another forum. To achieve his goal of relitigation, Mr. Quintero advances seven points of error. We believe the issues raised are most effectively addressed in the following order:

(1) Whether the district court erred either as a matter of law or by abusing its discretion by enjoining Mr. Quintero from relitigating the choice-of-law issue in his Louisiana state court action;

(2) whether the district court abused its discretion by dismissing Mr. Quintero's complaint *with prejudice;*

(3) whether the district court erred when it determined that Philippine law should govern this controversy;

(4) whether the district court abused its discretion by refusing to compel Klaveness to answer two interrogatories dealing with the choice-of-law issue;

(5) whether the district court abused its discretion by dismissing Mr. Quintero's complaint on the basis of *forum non conveniens;*

(6) whether the district court erred as a matter of law by making a choice-of-law determination prior to its dismissal for *forum non conveniens;* and

(7) whether the district court abused its discretion by denying Mr. Quintero's motion for voluntary dismissal.

## Enjoining Relitigation

■ Mr. Quintero contends that the district court either erred as a matter of law or abused its discretion when it enjoined him from relitigating the choice-of-law issue in Louisiana state court. We disagree. As a matter of law, the injunction is squarely within the relitigation exception of the Anti–Injunction Act, 28 U.S.C. § 2283. In dicta, the United States Supreme Court has noted that the relitigation exception of the Anti–Injunction Act allows a federal court to enjoin state court relitigation of a federal choice-of-law determination made pursuant to a *forum non conveniens* dismissal. *See Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 108 S.Ct. 1684, 1691–92, 100 L.Ed.2d 127 (1988). In *Chick Kam Choo,* the federal district court had determined that Singapore law governed a controversy and later dismissed the action for *forum non conveniens.* The Supreme Court reasoned that finding Singapore law controlling necessarily precluded the application of state law, and that "an injunction preventing relitigation of [the choice-of-law] issue in state court is within the scope of the relitigation exception to the Anti–Injunction Act." *Id.* at 1692.

Mr. Quintero correctly points out, however, that the district court must exercise discretion in deciding whether to issue an injunction. *See id.* Mr. Quintero contends that the district court abused its discretion, asserting that there is no evidence to support the district court's conclusion that the injunction was necessary to prevent irreparable harm. In a related vein, he contends that principles of res judicata are sufficient to protect Klaveness's interest in the choice-of-law determination. Again, we must disagree with Mr. Quintero's contentions. First, Klaveness maintained that the cost of relitigating the choice-of-law or res judicata issue in state court would irreparably injure Klaveness. Second, the trial judge rightfully relied on the Supreme Court's interpretation of the relitigation exception in the Anti–Injunction Act. The district court was aware that the relitigation exception grew out of res judicata

and collateral estoppel concerns, and that it was aimed at preventing the costly and judicially wasteful redetermination of issues in state court. *See Atlantic Coast Line R. Co. v. Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *see also Chick Kam Choo,* 108 S.Ct. at 1690. Being familiar with the history of the case, and presented with the arguments of counsel, the district court determined that it was appropriate to issue exactly the injunction that the Supreme Court authorized in *Chick Kam Choo.* We must conclude that the district court did not abuse its discretion by enjoining Mr. Quintero from relitigating the choice-of-law issue in Louisiana state court.

■ Finally, we address Mr. Quintero's contention that the injunction, although otherwise valid, is overbroad because it protects the Barwa interests. We begin by noting that the district court, in a Minute Entry dated December 12, 1989, found the Barwa interests to be in privity with Klaveness. Realizing that the relitigation exception is grounded in principles of res judicata and collateral estoppel, *see id.; see also Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491 (5th Cir.1988), (en banc) *cert. denied,* —— U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989), we have reviewed our holdings on these subjects and conclude that a district court may include privies of parties within the scope of its injunction. *See, e.g., Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1287–88 (5th Cir.1989); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 870 (5th Cir.1984); *see also Samuel C. Ennis & Co. v. Woodmar Realty Co.,* 542 F.2d 45 (7th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *International Ass'n of Machinists & Aerospace Workers v. Nix,* 512 F.2d 125 (5th Cir.1975). Accordingly, we hold that it is within the discretion of a district court to expand the scope of an otherwise valid injunction issued pursuant to the relitigation exception of the Anti–Injunction Act to include those in privity with parties to the federal court action. We have found that the injunction is valid under the Anti–Injunction Act and, given the district court's finding that the Barwa in-

terests were privies of Klaveness, we must conclude that the district court did not abuse its discretion by enjoining relitigation of the choice-of-law issue against the Barwa interests in Louisiana state court.

### Dismissing with Prejudice

■ In his second point of error, Mr. Quintero contends that the district court erred by dismissing his complaint with prejudice. First, Mr. Quintero argues that the district court never reached the merits of his case; therefore, he asserts that a dismissal with prejudice is improper. Limiting our review to questioning whether the district court abused its discretion, we find no merit in Mr. Quintero's argument. *See In re Air Crash Near New Orleans,* 821 F.2d at 1166. Our Court has noted that addressing the choice of law and applicability of law in maritime cases is a determination on the merits and, thus, may be treated as a motion for summary judgment. *See Nunez–Lozano v. Rederi,* 634 F.2d 135, 137 (5th Cir.1980), Unit A (cited only for the proposition stated); *Merren v. A/S Borgestad,* 519 F.2d 82, 83 (5th Cir.1975); *see also Yohanes v. Ayers S.S. Co.,* 451 F.2d 349 (5th Cir.), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972). Given that the district court determined, after discovery, that Philippine law governed this controversy, we conclude that the district court did reach the merits.

■ Second, Mr. Quintero argues that the nature of a *forum non conveniens* dismissal requires special deference and should not be granted with prejudice. He adds that the district court must ensure that plaintiffs can reinstate their suits in the alternative forum without undue inconvenience or prejudice. *See In re Air Crash,* 821 F.2d at 1166. We agree that deference is required, but disagree that this deference requires dismissal without prejudice. The district court imposed five prerequisites to entry of the judgment dismissing Mr. Quintero's claim. These prerequisites were designed to ensure that Mr. Quintero could reinstate and litigate his claim in the Philippines without undue in-

convenience or prejudice. We find that the preconditions contained in the district court's Minute Order of September 29, 1989 adequately protect Mr. Quintero's ability to litigate his claim in the alternative forum.

■ We also have a more fundamental disagreement with Mr. Quintero's contention that *forum non conveniens* dismissal should be without prejudice. As we have already noted, the United States Supreme Court expressly approved a district court's ability to enjoin relitigation of a choice-of-law determination made pursuant to a *forum non conveniens* dismissal. *See Chick Kam Choo*, 108 S.Ct. at 1691–92. The permissibility of the injunction was premised on an exception to the Anti–Injunction Act that was intended to give preclusive effect to the judgments of federal courts. Given that a district court can give its choice-of-law determinations in *forum non conveniens* dismissals preclusive effect by issuing an injunction, *forum non conveniens* dismissals may also be given preclusive effect by designating them as "with prejudice," so long as the plaintiff's ability to reinstate the action is otherwise adequately protected. By his argument, Mr. Quintero is seeking the right to refile his action and relitigate the choice-of-law determination in another, more sympathetic, forum. By dismissing with prejudice the district court is effectively enjoining any refiling and later relitigation. A *forum non conveniens* dismissal with prejudice has the same effect, in this case, as an injunction against any relitigation of the district court's choice-of-law determination; therefore, we conclude that nothing about a *forum non conveniens* dismissal requires a dismissal without prejudice.

Returning to the central question, because the district court did reach the merits of Mr. Quintero's claim, its dismissal is properly characterized as a summary judgment. This Court has long recognized that a summary judgment is necessarily granted with prejudice. *See, e.g., Tuley v. Heyd*, 482 F.2d 590, 594 n. 2 (5th Cir.1973). We must conclude that the district court did not abuse its discretion by dismissing Mr. Quintero's claim with prejudice.

### Determining Choice of Law

■ In his third point of error, Mr. Quintero contends that the district court reached the wrong result when it determined that Philippine law should govern this controversy. To address this contention, we must perform a de novo review of the Lauritzen–Rhoditis [2] factors. *See, e.g., James v. Gulf Int'l Marine Corp.*, 777 F.2d 193, 194 (5th Cir.1985); *Bailey v. Dolphin Int'l*, 697 F.2d 1268, 1274 (5th Cir. 1983).[3]

■ 1. The place of the wrongful act.— The parties agree that Mr. Quintero was injured on board the *M/V Barwa* while she was docked in the Port of New Orleans; however, they dispute the significance of this factor. In cases of shipboard torts, the location of the wrongful act is of minimal importance. *See Lauritzen v. Larsen*, 345 U.S. 571, 583, 73 S.Ct. 921, 929, 97 L.Ed. 1254 (1953) (noting that "[the location of the wrongful act] is of limited application to shipboard torts, because of the varieties of legal authority over water she may navigate"); *see also Diaz v. Humboldt*, 722 F.2d 1216, 1219 (5th Cir.1984) (cited for its approval of *Lauritzen* only). Yet, Mr. Quintero points out that the United States has an interest in the safe unloading of cargo in its ports and contends that the location of the wrong should significantly affect our choice-of-law determination in cases where a shipboard tort occurs in port.

**2.** The Lauritzen–Rhoditis test was derived from *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). The test requires a court to consider eight factors when making a choice-of-law determination. The factors are the place of the wrongful act, the law of the flag, the allegiance or domicile of the injured party, the allegiance of the ship owner, the place of contracting, accessibility of a foreign forum, law of the forum, and the shipowner's base of operations.

**3.** Although *James* and *Bailey* were overruled by *In re Air Crash* with respect to their approach to forum non conveniens dismissal, these cases still stand for the proposition that we perform de novo review of choice-of-law determinations.

We agree that the United States has an interest in the safe handling of cargo in its ports, but Mr. Quintero misapprehends the reason that the Supreme Court decided to minimize the significance of the ship's location in the case of shipboard torts. The Supreme Court was not implying that the sovereign of the location of a shipboard tort had no interest in preventing injury within its territory; rather, the Court recognized that the shipowner would be subjected to varying law based on the fortuity of the ship's location at the time a shipboard tort occurs. Ships are designed to travel; sailors must be on board during those travels; and occasionally some of those sailors will inevitably be injured. Loading and unloading cargo is an integral part of a ship's function and occurs regularly at ports around the world. Indeed, the *Lauritzen* Court considered the fact that ships often spend time in port and that ports are subject to the territorial claim of the local sovereign, but the Court concluded that maritime law requires a standard that minimizes the significance of location in cases of shipboard torts. *See Lauritzen*, 345 U.S. at 583–84, 73 S.Ct. at 928–29. Likewise, we conclude that the choice-of-law significance accorded the place of the wrongful act is determined by whether the tort occurred on board the ship, not whether the local sovereign has an interest in preventing the wrongful act. Accordingly, we will follow *Lauritzen* in giving the *M/V Barwa*'s location in New Orleans only limited significance.

2. The law of the flag.—The *M/V Barwa* was a Liberian flag vessel. Neither party suggests that Liberian law should apply.

3. The allegiance or domicile of the injured.—Mr Quintero is a citizen of and domiciled in the Philippines.

4. The allegiance of the shipowner.—The *M/V Barwa* is owned by Barwa, Inc., a Liberian corporation. In turn, Barwa, Inc. is wholly owned by four Norwegian interests. The vessel was operated by A/S Bulkhandling of Norway and managed by Klaveness's subagent, Klaveness Maritime Agency, Inc. of Norway, which maintains an office in the Philippines.

5. The place of contract.—Mr. Quintero signed the contract in the Philippines. The contract was developed by Klaveness in cooperation with the Philippine and Norwegian seamen's unions. The contract contains a choice-of-law clause providing that Philippine law governs the agreement.

6. The accessibility of a foreign forum.—The record indicates that the contract was approved by a Philippine government agency. Mr. Quintero is domiciled in the Philippines, and the contract provides that Philippine law is to govern any disputes.

7. The law of the forum.—This factor is inapplicable because Klaveness was involuntarily made a party. *See Nunez–Lozano*, 634 F.2d at 137 (cited only for the proposition stated).

8. The shipowner's base of operations.—In *Diaz*, we noted that an important consideration in determining the base of operations "is the location at which day-to-day operating activities are conducted." *Id.* at 1218. The *M/V Barwa* was operated and managed by Norwegian interests; and her Liberian owner was, in turn, wholly owned by Norwegian interests. The record indicates that she operated worldwide; thus, the fact that she called at United States ports, without more, does not support a finding of a United States base of operations. *See id.* Considering these facts, we conclude that the *M/V Barwa*'s base of operations was Norway.

Overall, given the limited significance of the place of the injury, there are no factors pointing to the application of United States law. Furthermore, none of the parties suggest that we apply either Norwegian or Liberian law. Looking to the remaining factors, we note that Mr. Quintero is a Philippine citizen, that the contract was executed in the Philippines with the approval of a Philippine government agency and the approval of the Philippine seamen's union, and that the contract specifies that Philippine law governs any dispute. Thus, we must conclude that Philippine law controls this controversy.

### Denying Discovery

■ In his fourth point of error, Mr. Quintero contends that the trial court abused its discretion by refusing to compel Klaveness to answer two of his interrogatories dealing with the choice-of-law issue. At the outset, we note that the district court has wide discretion in determining the scope and effect of discovery. *See, e.g., Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir.1982).

Mr. Quintero's attorney deposed Karre E. Borch, a representative of Klaveness, in February 1987. At that deposition, Mr. Borch gave a rough estimate that 10–20 percent of Klaveness's business was done with the United States, but went on to explain that this was merely his guess because Klaveness maintained no records from which these statistics could be derived. He further explained that the uncertainty was due to the way the international shipping business operates—particularly the fact that Klaveness and other shippers do not always use their own ships and frequently make substitute arrangements as the circumstances of particular voyages are affected by outside events.

While considering this case on remand, the district court allowed additional discovery on the choice-of-law issue. As part of his discovery effort, Mr. Quintero served two interrogatories on Klaveness that asked for a list of every nation with which Klaveness does more business than with the United States and a description of how and from what documents these determinations were made. Klaveness objected to these two interrogatories on the ground that, as Mr. Borch had already explained, Klaveness was unable to provide this information because it had no such records. The district court sustained Klaveness's objection—presumably concluding that Mr. Quintero was asking for information that he knew did not exist. We conclude that the district court did not abuse its discretion in sustaining Klaveness's objection.

### Dismissing Under Forum Non Conveniens

■ In his fifth point of error, Mr. Quintero contends that the district court abused its discretion by dismissing his complaint on the basis of *forum non conveniens*. We may reverse the district court only if it clearly abused its discretion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *In re Air Crash*, 821 F.2d at 1165–66. In *In re Air Crash*, we outlined an analytical process that district courts should follow when deciding motions for *forum non conveniens* dismissal. *See* 821 F.2d at 1165–66. In its Minute Entry of September 29, 1989, the district court meticulously followed the suggested analysis and—in a well reasoned and admirably crafted minute entry—concluded that it would grant *forum non conveniens* dismissal. We can add little to the district court's analysis; therefore, we adopt its reasoning on this subject and set out its Minute Order in Appendix A of this opinion. After a careful review of the record and the Minute Order, we conclude that the district court did not abuse its discretion by granting Klaveness's motion for *forum non conveniens* dismissal.

Mr. Quintero attempts to bolster his argument for finding an abuse of discretion by complaining that, despite the fact that the district court may have reasoned correctly, the district court addressed the merits of the *forum non conveniens* dismissal motion after he had stipulated to a *forum non conveniens* dismissal. We note, however, that if the district court had dismissed the case without addressing the merits of the *forum non conveniens* dismissal, it would merely be granting a motion for voluntary dismissal. Thus, Mr. Quintero's "stipulated *forum non conveniens* dismissal" is only a repackaging of his motion for voluntary dismissal and does not change our conclusion that the district court did not abuse its discretion by granting Klaveness's motion for *forum non conveniens* dismissal. We address Mr. Quintero's efforts to achieve voluntary dismissal later in this opinion.

### Reaching Choice of Law

■ In his sixth point of error, Mr. Quintero contends that the district court

erred as a matter of law by making a choice-of-law determination. Both parties agree that *In re Air Crash* controls the permissibility of a choice-of-law determination. We hold that *In re Air Crash* does not preclude a choice-of-law determination as part of a public-factors analysis made after a determination that an adequate forum is available. As the district court's Minute Entry shows, the court first determined that there was an adequate alternative forum, next considered the private interest factors, and finally considered the public interest factors, which necessarily required a choice-of-law determination. We agree wholeheartedly with the district court's methodology and conclude that it neither erred as a matter of law nor abused its discretion by making a choice-of-law determination.

## Denying Voluntary Dismissal

In his seventh point of error, Mr. Quintero contends that the district court abused its discretion in denying his motion for voluntary dismissal. He maintains that there was abuse of discretion for three reasons (1) neither party wanted the merits of the case addressed in federal court, (2) retention of the case to render a *forum non conveniens* dismissal with its choice-of-law determination violates important considerations of federalism and federal-state comity, and (3) Klaveness failed to show any legal prejudice from a voluntary dismissal of Mr. Quintero's claim.

■■■ In his first argument, Mr. Quintero maintains that, because Klaveness sought a *forum non conveniens* dismissal and he sought a voluntary dismissal, neither party wanted the merits of the case addressed in federal court; therefore, he contends that it was error for the district court to deny his motion for voluntary dismissal. The fatal flaw in Mr. Quintero's argument is that seeking a dismissal on the basis of *forum non conveniens* does not preclude addressing the merits. Earlier in this opinion we established that the district court permissibly made a choice-of-law determination as part of its *forum non conveniens* analysis. We also pointed out that

our Court considers a choice-of-law determination a decision reaching the merits. It follows that the motion of Klaveness for a dismissal on *forum non conveniens* grounds carried the potential for the district court to address the merits; therefore, Mr. Quintero's first argument is ill founded.

■■■ In his second argument, Mr. Quintero alleges that important considerations of federalism required the district court to grant his motion for voluntary dismissal. Specifically, he claims that the choice-of-law determination coupled with the injunction against relitigating the choice-of-law issue in state court violates federal-state comity. We disagree. As we noted earlier in this opinion, the Supreme Court specifically approved of an injunction to prevent relitigation of a federal court's choice-of-law determination in a case dismissed for *forum non conveniens*. Furthermore, we have already determined that the dismissal and choice-of-law determinations were proper. Thus, we must conclude that considerations of federalism, under the facts of this case, do not require a district court to grant a motion for voluntary dismissal.

■■■ Finally, in his third argument, Mr. Quintero suggests that because Klaveness did not show any legal prejudice he was entitled to voluntary dismissal. We agree with Mr. Quintero to the extent that a district court may deny voluntary dismissal only if the defendant shows plain legal prejudice. *See Pullman's Palace Car Co. v. Central Transp. Co.*, 171 U.S. 138, 146, 18 S.Ct. 808, 811, 43 L.Ed. 108 (1897); *see also LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir.1976). Yet, just as surely as Mr. Quintero is correct about the legal standard, Klaveness has demonstrated the required prejudice.

In federal court, Klaveness had the doctrine of *forum non conveniens* available. Under that doctrine and on the facts of this case, a choice-of-law determination was permissible. An injunction preventing relitigation of the choice-of-law issue in the pending state court action was equally permissible. Likewise, because a choice-of-law

determination is a decision on the merits, the district court could properly dismiss the action with prejudice, thus preventing further litigation in other forums. Conversely, if voluntary dismissal were granted, Klaveness would be open to both relitigation of the choice-of-law issue in state court and to additional litigation in forums other that the Philippines. We also note that, with respect to the Louisiana state court action, Klaveness would lose its *forum non conveniens* argument entirely. *See Kassapas v. Arkon Shipping Agency,* 485 So.2d 565 (La.App. 5th Cir.), *cert. denied,* 488 So.2d 203, *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). We conclude that the expense of relitigation, the exposure to additional actions, and the loss of the federal *forum non conveniens* defense, all of which would result from a voluntary dismissal, constitutes plain legal prejudice; therefore, the district court did not abuse its discretion by denying Mr. Quintero's motion for voluntary dismissal. None of Mr. Quintero's arguments supports a finding that the district court abused its discretion; accordingly, we must affirm the district court's denial of his motion for voluntary dismissal.

### Conclusion

The district court properly enjoined relitigation of its choice-of-law determination as allowed by *Chick Kam Choo;* properly dismissed Mr. Quintero's complaint with prejudice because it recognized that a choice-of-law determination reaches the merits of the controversy; properly exercised its discretion by denying Mr. Quintero's motion to compel; properly exercised its discretion in granting *forum non conveniens* dismissal; properly made its choice-of-law determination pursuant to its *forum non conveniens* analysis, and properly denied Mr. Quintero's motion for voluntary dismissal. On *de novo* review, we conclude that Philippine law governs this controversy. Considering that the rulings of the district court were proper in all respects, we AFFIRM its judgment in all respects.

AFFIRMED.

### APPENDIX

MINUTE ENTRY

McNAMARA, J.

SEPTEMBER 29, 1989

United States District Court, Eastern District of Louisiana.

Rosauro Quintero, et al

v.

Klaveness Ship Lines

Civil Action No. 86–4241.

Section "D" (2)

### I. INTRODUCTION

Before this Court is the Motion of Defendant, Klaveness Ship Lines, to Dismiss on the basis of *forum non conveniens.* Plaintiff, Rosauro Quintero, does not oppose this Motion, but asks the Court to refrain from making a choice of law determination. Pursuant to this Court's Minute Entry of April 3, 1987, this court entered judgment in favor of Defendants dismissing the Plaintiff's claims on the basis of *forum non conveniens.* The Fifth Circuit vacated this court's judgment and remanded the case, stating that the District Court did not have the advantage of *In Re Air Crash Disaster Near New Orleans, Louisiana,* 821 F.2d 1147 (5th Cir.1987), vacated and remanded on other grounds *sub. nom. Pan American World Airways, Inc. v. Lopez,* — U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), modified in part, aff'd. in part on remand, 883 F.2d 17 (5th Cir.1989). *Rosauro Quintero v. Klaveness Ship Lines, et al,* No. 88–3350 slip op. (5th Cir. January 13, 1989) (unpublished). The Fifth Circuit's *en banc* decision in *Air Crash* sets out in detail the findings a district court must make when deciding a motion for dismissal on the basis of *forum non conveniens.* This court has reviewed all the documents and memoranda submitted by the parties on the issue of *forum non conveniens* and now rules on this Motion.

## II. DISCUSSION

Since the Fifth Circuit affirmed its decision on remand in *Air Crash* regarding *forum non conveniens,* this court will apply the criterion set forth in that decision. In deciding a motion to dismiss a Plaintiff's case on the basis of *forum non conveniens,* a federal court sitting in diversity must apply the federal law of *forum non conveniens,* and not the forum's law. *Air Crash,* 821 F.2d at 1159. The test for deciding a motion to dismiss based on *forum non conveniens* is the same "in all cases regardless of their jurisdictional basis or subject matter." *Id.* at 1163, relying on *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). The Fifth Circuit has specifically overruled Jones Act and general maritime cases which have, in the past, utilized a modified analysis on *forum non conveniens* issues. *Id.* at 1163, n. 25.

The ultimate inquiry in deciding the issue of *forum non conveniens* is determining " 'where trial will best serve the convenience of the parties and the ends of justice.' " *Id.* at 1162 (quoting *Koster v. American Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)). The determination of what forum is most convenient includes several inquiries. First, the district court must

> decide whether an available and adequate forum exists. This is a two-part inquiry: availability and adequacy. A foreign forum is *available* when the entire case and all parties can come within the jurisdiction of that forum.... A foreign forum is *adequate* when the parties will not be deprived of all remedies or treated unfairly, ... even though they may not enjoy the same benefits as they might receive in an American court.

*Air Crash,* 821 F.2d at 1165 (emphasis added).

If the court determines that there is an available and adequate forum, then the court must consider the private interest factors. In considering these factors, the court should give deference to the Plaintiff's initial choice of forum. *Id.* at 1165. A foreign plaintiff's selection of an American forum deserves less deference then an American citizen's selection of her or his home forum. *Id.* at 1164. The court, however, cannot grant a dismissal under *forum non conveniens* simply because the Plaintiff is a foreigner. *Id.* at 1164, n. 26.

The private factors that must be considered are:

(1) Relative ease of access to sources of proof;

(2) Availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses;

(3) Probability of view of premises, if view would be appropriate to the action;

(4) The enforceability of a judgment if one is obtained; and

(5) All other practical problems that make a trial of a case easy, expeditious and inexpensive.

*Id.* at 1162.

After examining the private interest factors, the court must then proceed to determine whether the public interest factors weigh in favor of dismissal. 821 F.2d at 1165. The public interest factors to be considered are:

(1) Administrative difficulties flowing from court congestion;

(2) The local interest in having localized controversies resolved at home;

(3) The interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action;

(4) The avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and,

(5) The unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 1162–63.

After determining whether there is an available and adequate forum, and after considering the private and public interests involved, the court must ensure that the Plaintiff can bring the suit in an alternative forum "and that if the defendant obstructs such reinstatement in the alternative forum

that the plaintiff may return to the American forum." *Id.* at 1166. Finally, the court must set out its findings in writing or clearly state them in the record. *Id.*

The Plaintiff argues that a *forum non conveniens* analysis is not necessary because Plaintiff has stipulated to the dismissal. Plaintiff's Memorandum in Support of Defendant's Motion to Dismiss under the doctrine of *forum non conveniens*, p. 3. The Fifth Circuit, however, has stated that a summary determination of a motion to dismiss on *forum non conveniens* without either written or oral explanation is a clear abuse of discretion. 821 F.2d at 1166. Moreover, a district court abuses its discretion if "it fails to address and balance the relevant principles and factors of the doctrine of *forum non conveniens.*" *Id.*

### III. APPLICATION OF THE AIR CRASH FACTORS TO THE PRESENT CASE

A. *Available and Adequate Forum*

1. Available

As previously stated, a foreign forum is available when all the parties to the case can be brought within the jurisdiction of that forum. *Air Crash,* 821 F.2d at 1165. "The defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of forum non conveniens analysis." *Syndicate 420 at Lloyd's London v. Early American Insurance,* 796 F.2d 821, 830 (5th Cir.1986) (citing *Voba–Chemie A. G. v. M/V GETAFIX,* 711 F.2d 1243, 1245 (5th Cir.1983)). By conditioning the dismissal of *forum non conveniens* upon Klaveness' waiver of jurisdictional defenses, this court can ensure that an available forum exists. *See Syndicate 420,* 796 F.2d at 830. Klaveness has already certified that it will submit to service of process and jurisdiction in the Philippines. Therefore, the Philippines is an available forum.

2. Adequate Forum

Dismissing a case on the basis of *forum non conveniens* may result in an unfavora-ble change in the law to be applied. Such a change "should not be conclusive or even a substantial factor in a court's decision to dismiss for *forum non conveniens;*" unless, however, the change "results in the remedy provided by the alternative forum being so clearly inadequate or unsatisfactory such that it is no remedy at all...." *Air Crash,* 821 F.2d at 1164, n. 27. Moreover, there is a presumption that the substantive law of a foreign forum is adequate. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 392 (5th Cir.1983). Because neither party has suggested that Philippine law would deprive Plaintiff of a remedy, the court finds the Philippines to be an adequate forum.

B. *Private Interest Factors*

1. Relative Ease of Access to Sources of Proof

The evidence demonstrates that four of the five witnesses to Plaintiff's fall reside in the Philippines and one witness resides in Norway. Answers to Interrogatories, p. 1. It would be difficult and expensive to transport these witnesses to the United States. Also, these witnesses would most likely require an interpreter to testify. While the Plaintiff has been treated by doctors in Louisiana, this testimony can be taken and presented through deposition.

2. Availability of Compulsory Process for Attendance of Unwilling, and the Costs of Obtaining Attendance of Willing Witnesses

The foreign witnesses would not be subject to service of process in the Eastern District of Louisiana. Their presence could, however, be obtained in the Philippines. Moreover, even if these foreign witnesses were willing to come to the United States, transporting them here would add tremendously to the costs of this litigation.

3. Probability of View of Premises, If View Would be Appropriate to the Actions

The Plaintiff's injury occurred aboard a vessel in New Orleans. The vessel's location at the Port of New Orleans at the time

of the accident is entirely fortuitous. The accident did not involve the location of the vessel in New Orleans nor any special circumstances in the Port of New Orleans. A view of the area in New Orleans where the Plaintiff was injured, therefore, is not necessary or appropriate in this action.

### 4. The Enforceability of a Judgment if One is Obtained

Klaveness has no offices in the United States, and it includes no person, firm or corporation maintaining an office or residing either in the United States or in the State of Louisiana. Affidavit of Kaare E. Borch, p. 2. Because there are no assets in the United States, it would be difficult to enforce a judgment in the United States against Klaveness. Klaveness, however, does maintain an office in the Philippines, which would enable the Plaintiff to enforce a judgment more easily against Klaveness in the Philippines than in the United States.

### 5. All other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

No aspect of this case has yet been easy, expeditious or inexpensive. The likelihood of needing translators for testimony increases the probable length and cost of trial. This court has not ruled on the merits of the case; consequently, there will be no duplicative rulings or hearings and no waste of judicial resources if this court grants Defendant's Motion to Dismiss on the basis of *forum non conveniens*.

### C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

This case has already demanded much judicial time and attention. Plaintiff filed suit in September 1986, almost three years ago, and has twice appealed the judgments of this court. In addition, both parties have filed numerous memoranda which have required judicial attention. While the court acknowledges that some expenditure of judicial resources is to be expected in order to resolve disputes, the courts have an interest in not expending judicial resources where the parties are so remotely connected to the United States.

### 2. The Local Interest in Having Localized Controversies Resolved at Home

This case does not involve the wrongdoing of a defendant of the United States nor the injuries of a United States citizen. It does, however, involve an injured Filippino and a Norwegian defendant that maintains an office in the Philippines. Clearly, this dispute is of more interest to the Philippines than the United States. While the injury did occur in New Orleans, the injury was limited to the actions aboard the vessel. The parties do not allege that the injury involved any failure to observe the regulations or laws of New Orleans or of the United States. Under these facts, the United States has virtually no interest in deciding this dispute.

### 3. The Interest in Having the Trial of a Diversity Case in a Forum that is Familiar with the Law That Must Govern the Action

Although *Air Crash* rejected the Fifth Circuit's former *forum non conveniens* approach "which fixed choice of law as the predominant, if not exclusive factor, choice of law is still an important consideration. Certainly it is relevant in determining the public interests at stake." *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir.1987). Since "no one set of factors is conclusive, [the court should] also address the factors of public interest." *Id.* at 879. A district court, therefore, should make a choice of law determination in considering the public interest factors.

The Plaintiff argues that this Court should not make a choice of law determination, reasoning that *Air Crash* dictates making a choice of law determination only when the forum non *conveniens* dismissal is contested. In this action, the Plaintiff has stipulated to the *forum non conveniens* dismissal. Plaintiff's Supplemental Memorandum, p. 3–4.

This Court declines to read *Air Crash* so narrowly. *Air Crash* makes it clear that a district court should make a choice of law determination in deciding a *forum non conveniens* issue. *Air Crash,* 821 F.2d at 1166; *see also Kempe v. Ocean Drilling & Exploration Co.,* 683 F.Supp. 1064, 1070 (E.D.La.1988), *aff'd, Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1146 (5th Cir.1989).

In making a choice of law determination in the maritime setting, a district court applies the *Lauritzen–Rhoditis* test.[1] This test mandates that a district court should consider the following:

(i) The Place of the Wrongful Act.

The place of the wrongful act is the United States. The M/S BARWA was docked at the Port of New Orleans when the accident occurred. However, because this is an alleged "shipboard tort," the significance of the application of this specific factor is limited.

*See Diaz v. Humboldt,* 722 F.2d 1216 (5th Cir.1984).

(ii) The Law the Flag.

The M/S BARWA is a Liberian flag vessel.

(iii) Allegiance or Domicile of the Injured Party.

The Plaintiff in this case is domiciled in the Philippines.

(iv) Allegiance of the Ship Owner.

The shipowner is an entity incorporated and existing under the laws of Liberia and wholly owned by Norwegians. The vessel is commercially operated by A/S Bulkhandling of Norway and is managed by the Defendant Klaveness in Norway. At the time of the injury, the M/S BARWA was being managed by Klaveness' subagent, Klaveness Maritime Agency, Inc., which maintains an office in the Philippines.

(v) Place of Contract.

The place of the contract is the Philippines. The Plaintiff signed the contract in the Philippines, which was developed by the Defendant Klaveness in cooperation with the Philippine and Norwegian seamen's unions. The contract's express terms provide that the contract shall be governed by the laws of the Philippines.

(vi) Accessibility of a Foreign Forum.

The contract expressly states that disputes are to be governed by the laws of the Philippines, which is the domicile of the Plaintiff. Any disputes under this contract could therefore be resolved under the jurisdiction of that country.

(vii) Law of the Forum.

This specific test has been held to be inapplicable where the Defendant, as in the case presented herein, is involuntarily made subject to American jurisdiction. *Diaz v. Humboldt,* 722 F.2d at 1218.

(viii) Shipowner's Base Operations.

A Liberian corporation, Barwa, Inc., owns the M/S BARWA. This corporation is wholly owned by Norwegians. The vessel itself, operates worldwide.

The above analysis indicates that there are substantial contacts with the Philippines which favor an application of the law of the Philippines rather than the law of the United States. The fact that foreign law is applicable gives further weight to the conclusion that the Philippines is the most convenient forum. *See Gonzales,* 832 F.2d at 881.

### 4. The Avoidance of Unnecessary Problems and Conflicts of Law

Because the court has determined that Philippine law applies to this action, problems in conflicts of law can be avoided if this case is tried in the Philippines.

### 5. The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

The facts in this case demonstrate that beside the occurrence of the tort on a vessel temporarily located in New Orleans, the United States has no interest or contact with this dispute. It would, therefore, be unfair to require United States citizens to

---

**1.** This test is derived from *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

sit as jurors in a case where the United States has so little interest.

## IV. CONCLUSION

The court has determined that the Philippines is an available and adequate alternative forum. In addition, the private and public interest factors weigh in favor of having this dispute adjudged in the Philippines. Accordingly, for the foregoing reasons, IT IS ORDERED that Defendant's, Klaveness, Motion to Dismiss on the Basis of *Forum Non Conveniens* should be and is GRANTED dismissing the Complaint, with prejudice, conditional upon Klaveness certifying in the record by October 16, 1989, that it will:

(A) Submit to service of process and jurisdiction in the appropriate forum in the Philippines;

(B) Formally waive in the proceeding in the Philippines any statute of limitations defense that has matured since the commencement of this action in American courts;

(C) Make available in the Philippine proceeding all relevant documents under their control and all relevant witnesses who were their employees at the time of the accident and who remain their employees at the time of the trial of the matter in the Philippine forum;

(D) Agree that any depositions, answers to interrogatories, responses to requests for production of documents, and admissions filed herein may be used in the Philippine proceeding to the same extent as if they originated there;

(E) Formally agree in the Philippine proceeding to satisfy any final judgment rendered by such court.

Should the Defendant Klaveness fail to so certify by October 16, 1989, this court will then consider the Defendant's Motion as denied and this court shall resume jurisdiction over this case.