# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2025

Lyle W. Cayce
Clerk

———————

No. 24-50779

———————

OSR Enterprises AG; OSR R&D Israel, Limited,

*Plaintiffs—Appellants*,

*versus*

Ree Automotive, Limited; Ree Automotive Holding, Incorporated; Ree Automotive USA, Incorporated,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-1327

———————————————————

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

OSR Enterprises AG, a Swiss corporation, and OSR R&D Israel Ltd., an Israeli corporation (together, "OSR"), appeal the dismissal of their claims against REE Automotive Ltd., REE Automotive Holding, Inc., and REE Automotive USA, Inc. (together, "REE") for *forum non conveniens*. They argue that Israel is not an adequate alternative forum, and that on

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

balance, the relevant private and public interest factors do not support dismissal. We AFFIRM.

I

After almost a decade of research, OSR created an AI-driven central computer for autonomous and smart vehicles—EVOLVER. In September 2019, OSR's head of research and development, Ohad Stauber, copied the source code for EVOLVER to an external drive. He announced his resignation from OSR two months later.

Soon after, Stauber joined REE Automotive Ltd., an Israeli corporation, as its head of research and development. Eight additional high-ranking OSR employees followed him. REE originally sold "a mechanical suspension system for wheelchairs", but less than a year after Stauber joined it, REE unveiled an "advanced, central AI computer processor with a suite of capabilities all directly mirroring OSR's EVOLVER."

In February 2021, REE Automotive Ltd. and the predecessor to REE Automotive Holding, Inc. announced a merger that "would make REE publicly traded on the NASDAQ and yield it $500 million in cash . . . ." Later that year, REE announced a new autonomous fleet vehicle called the REE Leopard. In 2022, REE announced that it had partnered with a Texas-based company, EAVX, to produce an electric van. REE Automotive USA, Inc. also signed a ten-year lease for its "headquarters and 'integration center'" in Pflugerville, Texas.

In 2022, OSR sued REE in the Western District of Texas, under the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). According to OSR, it was "inconceivable" that REE could have developed its processor without the benefit of OSR's trade secrets because "[c]reating a central computer for a case with these advanced vehicular control capabilities is extremely difficult, time-intensive, and

expensive," and "REE had no prior experience in these fields." OSR also brought a claim for unfair competition and requested injunctive relief.[1]

On May 5, 2023, REE moved to dismiss OSR's amended complaint for *forum non conveniens*, arguing that Israel was an adequate, available, and more appropriate forum for the dispute. The magistrate judge to whom the case was referred recommended that the district court grant REE's motion and dismiss OSR's claims. OSR objected, but the district court overruled the objections, adopted the recommendation, and dismissed OSR's claims. OSR now appeals.

## II

"*Forum non conveniens* is a common law doctrine that promotes convenient trials." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020). To determine whether to dismiss a case for *forum non conveniens*, the district court must first assess whether there is an adequate and available alternative forum. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379–80 (5th Cir. 2002). If such a forum exists, the district court must then conduct a balancing test based on private interest and public interest factors. *Id.* The defendant bears the burden. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007). On appeal, the district court's determination should not be disturbed absent a clear abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

---

[1] OSR later added a claim for civil conspiracy in its amended complaint, but that claim is not addressed in OSR's brief.

No. 24-50779

## III

OSR first argues that the district court abused its discretion in holding that Israel is an adequate forum for several reasons.[2]

"[T]here is a presumption that the substantive law of a foreign forum is adequate." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 728 (5th Cir. 1990). For purposes of a *forum non conveniens* analysis, "[a]dequacy does not require that the alternative forum provide the same relief as an American court." *DTEX, LLC*, 508 F.3d at 796 (citation modified). Instead, "[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *Id.* But the Supreme Court has clarified that, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, . . . the district court may conclude that dismissal would not be in the interests of justice." *Piper Aircraft Co.*, 454 U.S. at 254.

## A

OSR initially challenges the district court's conclusion that proceeding in Israel would not leave OSR with "no remedy at all." According to OSR, the district court failed to appreciate that Israeli law does not issue extraterritorial injunctions to protect intellectual property rights, and that REE's misappropriation is primarily occurring in the United States.[3]

---

[2] The parties do not contest that Israel is an available forum.

[3] In its brief, OSR also argues that Israeli law does not provide a cause of action for misappropriation outside of Israel. But as REE correctly notes, OSR did not re-urge this point in its objections to the magistrate judge's report and recommendation, and has likely forfeited it on appeal. *See* Fed. R. Civ. P. 72(b)(1); *Boren v. N.L. Indus., Inc.*, 889 F.2d

Here, OSR and REE presented competing expert declarations from Israeli lawyers that reached opposite conclusions. OSR's expert averred that it is "very likely" that Israel would not enjoin extraterritorial trade secret misappropriation, while REE's expert averred that Israel can—and will—issue extraterritorial injunctions.

At issue is whether OSR has overcome the presumption that "the substantive law of a foreign forum is adequate." *Quintero*, 914 F.2d at 728. The Supreme Court has explained that there are only "rare circumstances" where "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft Co.*, 454 U.S. at 255 n.22. To be "clearly unsatisfactory," the remedy afforded in the proposed alternative forum must amount to "no remedy at all." *Id.* at 254. OSR's expert only discusses "very likely" possibilities, and he relies on Israeli cases that REE's expert distinguishes. Because its evidence does not indicate that OSR will be left with "no remedy at all," OSR has not overcome the presumption that Israel is an adequate forum.

B

OSR next argues that the "district court also erroneously discounted [its] ability to assert its unfair-competition claim in Israel." It notes that according to its expert's declaration, this claim is available only when an employee uses confidential information acquired in the course of employment in violation of a fiduciary duty. But here, "OSR's unfair competition claim is against REE, not former employees, such that OSR is not asserting a breach of fiduciary duty."

---

1463, 1465 (5th Cir. 1989). Accordingly, and because courts typically only assess remedies in an adequacy analysis, we do not address whether this cause of action exists in Israel.

No. 24-50779

The parties again present competing expert declarations that reach very different conclusions: OSR's expert averred that Israel's Commercial Tort Law could "potentially" preempt OSR's unfair competition claim, while REE's expert averred that it "clearly contains a cause of action of an employer against another company . . . ."

Again, OSR must overcome the presumption that "the substantive law of a foreign forum is adequate." *Quintero*, 914 F.2d at 728. Its expert declaration does not establish that Israel forecloses "litigation of the subject matter of the dispute," *id.*, instead highlighting theoretical possibilities about how the Israeli Supreme Court could interpret the Commercial Tort Law. Moreover, OSR's unfair competition claim is based on trade secret misappropriation, a claim its expert indicates is recognized in Israel. This court has found a forum to be adequate if it would provide some relief, even if some claims are foreclosed. *See Kempe v. Ocean Drill & Expl. Co.*, 876 F.2d 1138, 1142 (5th Cir. 1989) (holding that the mere fact that one out of several causes of action could not be brought in a foreign forum did not render that forum inadequate); *Gonzalez*, 301 F.3d at 381 (rejecting plaintiffs' contention that a forum's decision to limit damages and the availability of strict liability—even to the point at which the suit ceases to become economically viable—renders that jurisdiction inadequate).[4]

C

OSR additionally contends that the "court also abused its discretion in discounting OSR's 'practical access to courts and remedy' in Israel." "If

_____

[4] *See also Adams v. Merck & Co. Inc.*, 353 F. App'x 960, 963 (5th Cir. 2009) ("While loss of consortium may not be a viable claim in some parts of the U.K., English law, at least, allows for damages for losses incurred caring for an injured spouse, which means that those Appellants who are spouses of allegedly injured parties would not be left without any remedy . . . below.").

the case proceeds in Israel, [according to OSR], the OSR employees REE poached will assert a privilege of self-incrimination—a privilege which would not be available to them in the U.S."

Although OSR casts its argument as an issue of "practical access," a self-incrimination privilege has not typically been a consideration in determining the adequacy of an alternate forum.[5] The adequacy determination has instead typically focused on whether the remedies offered by that forum are "clearly unsatisfactory," *Piper Aircraft Co.*, 454 U.S. at 255 n.22, such that they amount to "no remedy at all," *id.* at 254.

Here, it is unclear that proceeding in Israel would deprive OSR of all remedies as compared to proceeding in the United States. REE has introduced evidence that most of the Israeli third-party witnesses are "not willing to voluntarily waive any right [they have] to refuse to participate in this action." Those third-party witnesses live and work in Israel, indicating that a federal court would also likely be unable to compel them to testify at trial in the United States. *See* Fed. R. Civ. P. 45(c)(1)(A). OSR has not shown that proceeding in the United States would yield a different result.

D

Finally, OSR argues that "[t]he district court also erroneously 'agree[d]' with REE's Israeli law expert that OSR's civil suit should proceed in the same legal system as a criminal investigation in Israel

---

[5] *See CFE Int'l LLC v. Schnaas*, No. 22-CV-3385, 2023 WL 6702486, at *6 (S.D. Tex. Oct. 12, 2023) (assessing the defendants' right under Mexican law against self-incrimination as an issue pertaining to choice of law); *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-CV-21680, 2012 WL 4477504, at *15 n.11 (S.D. Fla. Sept. 26, 2012) (rejecting the plaintiffs' argument that witnesses subject to criminal proceedings in Italy are "inaccessible" because of self-incrimination concerns), *aff'd*, 523 F. App'x 651 (11th Cir. 2013).

'regarding the same facts that are claimed in this lawsuit.'" The district court found that "Israel is not an unavailable forum because a criminal investigation of the same conduct is ongoing there." This does not appear to be, as OSR asserts, based on any opinion "concerning the adequacy of foreign courts."

In conclusion, OSR has not shown that the district court clearly abused its discretion in holding that Israel was an adequate alternative forum.

## IV

OSR also argues that the district court abused its discretion by failing to apply the correct private interest factors of the *forum non conveniens* analysis.

The private interest factors in this analysis include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 213 (5th Cir. 2010).

## A

As to the first private interest factor, OSR asserts that the district court "ignored" evidence outside of the district and focused on the evidence's location rather than its accessibility.

OSR presented evidence that there are over fifty-five American third-party witnesses with documents, while REE averred that "all electronically stored documents and communications regarding REE's hiring practices, contracts with third parties, intercompany contracts, finances, intellectual property . . . are located and managed in Israel."

The district court specifically acknowledged "OSR['s] argu[ment] that most third-party evidence is located outside of Israel." It did not "ignore" evidence outside of the district.

The district court also noted that, despite the possibility of electronic transfer, the location of the evidence remains "germane." This court has rejected the argument that location is no longer relevant in a convenience analysis: "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent [technological] developments does not render this factor superfluous." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008).[6]

## B

OSR next argues that as to the second private interest factor, "[t]he district court similarly abused its discretion by failing to properly examine the availability of compulsory process for unwilling witnesses . . . ." According to OSR, the district court erred in examining only third-party witnesses physically located in the Western District of Texas rather than the United States as a whole.

OSR's allegations and the parties' disclosures make clear that many non-party Israeli citizens are likely to be important witnesses in this case.

---

[6] *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (rejecting the idea that the ease-of-access factor is "somewhat antiquated in the era of electronic storage and transmission"); *Norman IP Holdings, LLC v. Casio Comput. Co., Ltd.*, No. 09-CV-270, 2010 WL 4238879, at *5 (E.D. Tex. Oct. 27, 2010) ("Contrary to Plaintiff's contention, the burden of transporting these documents is relevant to the Court's transfer analysis, despite the possibility of electronic production"); *see also Burrus Mortg. Portfolio P'ship III v. N. Bank Ltd.*, No. CIV.A. 12-1445, 2013 WL 2250151, at *9 (E.D. La. Feb. 1, 2013) ("The ease of access to physical evidence also favors Northern Ireland. Although electronic delivery technology, as plaintiff argues, no doubt has diminished the weight to be given the location of documents, it does not eliminate the consideration.").

These witnesses cannot be compelled to attend trial, and REE has offered evidence that "[i]n light of the alleged ongoing Israeli investigation, [the former employees are] not willing to voluntarily waive any right [they have] to participate in this action." OSR identified only one witness in Austin, and three other witnesses, in Houston, Stafford, and Fort Worth, who are outside of subpoena range. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to litigants." *DTEX LLC*, 508 F.3d at 799 (citation modified) (quoting *Perez & Compania* (*Cataluna*), *S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir. 1987)).

C

Regarding the third private interest factor, OSR also argues that the district court "overlooked" REE's failure to establish that the cost of attendance of witnesses would be disproportionate. The district court did not address the cost of obtaining the attendance of willing witnesses. In its motion to dismiss, REE argued that securing the attendance of willing Israeli witnesses "still tilts in favor of dismissal—as the travel, lodging, and meal costs, among others, would be prohibitively more than those for any U.S.-based witness to travel to Israel." "The large number of [Israeli] witnesses in this case . . . add[s] to the cost of securing their attendance, even if they were willing to appear in Texas." *DTEX LLC*, 508 F.3d at 800.

D

OSR argues that the district court abused its discretion as to the fourth factor in finding that "the opportunity to view the premises is not relevant." Proceeding in Israel, according to OSR, "would demand the near impossible task of transporting to Israel entire vehicles manufactured abroad." OSR does not explain why its claims, premised on allegations that

REE misappropriated its source code, require inspection of "entire vehicles manufactured abroad," however.

E

As to the last "catch-all" factor, OSR argues that the district court "failed to consider several other practical factors relevant to the private interest analysis."

OSR argues that the district court did not consider that the Israel-Hamas War would affect the convenience of the forum to witnesses. OSR did not raise this argument in its objections, and "[a] party's failure to object to a magistrate judge's report and recommendation restricts the appeals court to a plain error standard of review." *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 270 (5th Cir. 2019) (citation modified). "To show plain error, a litigant must show a 'clear or obvious error that affected substantial rights or seriously affected the fairness or integrity of the judicial proceeding.'" *Id.* (quoting *United States v. McGill*, 74 F.3d 64, 68 (5th Cir. 1996)). Here, OSR has not argued, let alone established, that the failure to discuss the impact of the war constitutes plain error.

OSR also argues that the district court "ignored" that REE's Israeli employees are in the United States "all the time," and that they are "contractually required to be fluent in English." This, it claims, conflicts with "REE's assertion that its witnesses would require interpreters and documents to be translated." REE offered evidence that, although some third-party witnesses could speak English, "[their] primary and native language is Hebrew," and traveling to the United States from Israel "would impose a burden on [these witnesses] personally and professionally."

Finally, OSR argues that the "Western District of Texas has confirmed expertise with technical matters of this size and significance that the Israeli court would likely lack." OSR fails to explain how this will affect

the speed and expense associated with trial, or indicate how the district court's alleged failure to consider this point amounts to a clear abuse of discretion.

The district court did not abuse its discretion in determining that the private interest factors favor dismissal.

V

Lastly, OSR argues that the public interest factors support its choice of forum.

The public interest factors in a *forum non conveniens* analysis include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *DTEX, LLC*, 508 F.3d at 794.

The district court found the "first factor, court congestion, to be neutral," and concluded that REE failed to show that the third and fourth factors favored dismissal. As REE correctly notes, OSR did not object to these findings below, nor did it address these factors in its opening brief. OSR has forfeited any challenge to these factors on appeal. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal."). The district court also found that the fifth factor heavily favored dismissal because it would be unfair to burden the citizens of the Western District of Texas with a dispute "almost entirely unrelated to this forum."

Although OSR objected to this finding below, it did not pursue the issue on appeal and likewise forfeited any challenge.

As for the second factor, OSR asserts that the district court "abused its discretion . . . because it limited its consideration to the Western District of Texas rather than the U.S. as a whole." OSR argues that the United States has an interest in this litigation because REE obtained funding from American sources, and the United States is REE's commercial focus. It also argues that the United States and Texas have an interest in ensuring their laws are enforced.

This court has considered a state or district's interest in adjudicating a dispute in some cases, and it has assessed a national interest in adjudicating the dispute in others. *Compare DTEX, LLC*, 508 F.3d at 802 (assessing Mexico's interest as compared to the United States's interest in resolving the dispute), *with Gonzalez*, 301 F.3d at 383–84 (assessing Mexico's interest as compared to Texas's interest in resolving the dispute). Without more, the district court's focus on the Western District of Texas rather than the United States is not an abuse of discretion.

In determining whether a "local interest" exists, this court has primarily considered the parties' citizenship as well as the location where the at-issue acts took place. *See Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 700 (5th Cir. 2015) ("Moreno is a Mexican citizen and resident. She does not contest that her alleged injury occurred in Mexico during the course of her employment with a Mexican company, while working in a facility owned and operated by other Mexican entities."); *DTEX, LLC*, 508 F.3d at 802 ("The alleged torts all occurred in Mexico. Mexican courts have a greater interest than an American court in deciding whether Mexico's court system was systematically abused or manipulated . . . ."); *Gonzalez*, 301 F.3d at 383 ("[T]he tort victim was a Mexican citizen, the driver of the Chrysler LHS

(Gonzalez's wife) is a Mexican citizen, and the plaintiff is a Mexican citizen. The accident took place in Mexico. Gonzalez purchased the car in Mexico.").

Here, OSR is alleging that an Israeli citizen employed as OSR's head of research and development, Stauber, stole trade secrets OSR developed in Israel and then joined REE, an Israeli corporation. Several other OSR employees—all of whom live in Israel—allegedly followed Stauber to REE. OSR alleges that REE, through its former employees, misappropriated OSR's trade secrets in Israel to develop an "advanced, central AI computer processor with a suite of capabilities all directly mirroring OSR's EVOLVER," again in Israel. REE averred that it has no employees in the United States. It also averred that its American subsidiaries have no principal office in the United States, and that the "'integration center' in Pflugerville . . . is not operational and, indeed, no certificate of occupancy has been issued for it." The district court correctly noted that "REE USA's plans in Pflugerville create little or no local interest in having this case resolved" in the Western District of Texas or in the United States.

The district court did not abuse its discretion in finding that the public interest factors favor dismissal.

VI

We AFFIRM the decision of the district court.