## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 26, 2020

Lyle W. Cayce
Clerk

No. 19-40489

SIERRA FRAC SAND, L.L.C.,

      Plaintiff - Appellant

v.

CDE GLOBAL LIMITED,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before OWEN, Chief Judge, and SOUTHWICK and OLDHAM, Circuit Judges.
LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiff sued for fraud, misrepresentation, and breach of contract. The defendant moved to dismiss under the doctrine of *forum non conveniens*, relying on a forum-selection clause found in a document external to, but incorporated into, the parties' contract. The district court enforced the forum-selection clause and dismissed. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

"Frac sand" is a naturally occurring form of sand with properties that make it particularly useful to the oil and gas industry in the process of "hydraulic fracturing," or "fracking." The plaintiff, Sierra Frac Sand, L.L.C., is a limited liability company based in Texas that produces frac sand. In May

No. 19-40489

2017, Sierra contracted with the defendant, CDE Global Limited, a Northern Irish company, to design, deliver, and assemble sand-processing equipment for Sierra's Louisiana-based processing facility.  On each page of the parties' final agreement is a banner containing the CDE logo and the words "Order Acknowledgement CDE Global General Conditions – July 2017."  Above the signature blocks in the agreement is the following language: "This Order Acknowledgement is subject to the Standard Terms and Conditions of Sale of CDE Global Limited.  A copy of our Standard Terms and Conditions of Sale is available upon request."

When construction of the plant took longer than expected, Sierra filed suit against CDE in the United States District Court for the Eastern District of Texas, asserting claims of fraud, misrepresentation, and breach of contract. CDE moved to dismiss on several grounds, including *forum non conveniens*.  It argued that the document referred to in the order acknowledgment was a 2016 addendum titled "CDE General Conditions – June 2016," and that the addendum was effectively incorporated into the order acknowledgment.  The addendum includes a forum-selection clause providing for the "exclusive jurisdiction of the Courts of Northern Ireland."  Although Sierra never asked for a copy of the "Standard Terms and Conditions of Sale" during negotiations, Sierra argued that the 2016 addendum was not the incorporated document.

Relying on Texas contract law, the district court determined that the parties had in fact incorporated the forum-selection clause into the agreement. It concluded that the balancing factors for *forum non conveniens* analysis weighed in favor of dismissal.  The district court dismissed the case without prejudice.  Sierra timely appealed.

DISCUSSION

"A federal court sitting in diversity applies the federal law of *forum non conveniens* in deciding a motion to dismiss in favor of a foreign forum." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 793 (5th Cir. 2007). *Forum non conveniens* is a common law doctrine that promotes convenient trials. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). Under the doctrine, a court may relinquish its jurisdiction through dismissal of a case, so that the case may be adjudicated elsewhere. *DTEX*, 508 F.3d at 793. To determine whether to dismiss a case under *forum non conveniens*, a district court first assesses whether there is an adequate and available alternative forum. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379–80 (5th Cir. 2002). Then the court conducts a balancing test based on "private-interest" and "public-interest" factors. *DTEX*, 508 F.3d at 794. The defendant bears the burden of showing that those factors weigh in favor of dismissal. *Id.* When assessing a forum-selection clause in a *forum non conveniens* case, we review *de novo* the district court's interpretation of the forum-selection clause and the court's determination as to the clause's enforceability. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). We review the district court's weighing of the private- and public-interest factors for a clear abuse of discretion. *Id.*

Ordinarily, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A valid forum-selection clause changes this dynamic. The private-interest factors are deemed to "weigh entirely in favor of the preselected forum," and "the plaintiff's choice of forum merits no weight." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016). As a result, "in all but the most unusual cases," the "forum-selection clause controls the *forum non conveniens* inquiry." *Id.* (alteration omitted).

No. 19-40489

Here, the district court concluded that the agreement incorporated by reference the 2016 addendum and its forum-selection clause.  The district court then analyzed the relevant factors and concluded they weighed in favor of dismissal and enforcing the forum-selection clause.   We examine both conclusions.

Under Texas law, a contract may incorporate an unsigned document by reference "provided the document signed by the defendant plainly refers to another writing." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968).  The specific language used is not important.  *Id.*  Even so, "[p]lainly referring to a document requires more than merely mentioning the document.  The language in the signed document must show the parties intended for the other document to become part of the agreement." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (citation omitted).  That court held that the fact a contract mentioned additional details were "available for your review" on a website was insufficient to cause the incorporation of the external document, specifically, the forum-selection clause on a webpage.  *Id.* at 190.  On the other hand, there was sufficient reference for incorporation of a jury-waiver clause in a lease when, in a guaranty document for the lease, the guarantor promised to "'faithfully perform and fulfill all of the terms, covenants, conditions, provisions, and agreements' of the lease." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004).

After determining a document is incorporated by reference, a court must ensure that the document the party relies on for incorporation is in fact the document mentioned in the contract.  *See IBM Corp. v. Lufkin Indus., Inc.,* 564 S.W.3d 15, 36–37 (Tex. App.—Tyler 2017), *aff'd in part, rev'd in part on other grounds sub nom. IBM Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224 (Tex. 2019).  In the cited case, a contract referred to "the IBM Customer Agreement ('ICA'), number HQ 12291, dated January 22, 1991."  573 S.W.3d at 228 n.3.

IBM had proffered a document with an entirely different number, but IBM's witness "did not explain the differences between the two document reference numbers." 564 S.W.3d at 37. That intermediate appeals court concluded the trial court acted within its discretion in refusing to admit the document into evidence. *Id.* The Texas Supreme Court, though partially reversing, agreed the contract "incorporate[ed] a document" but the relevant document "was never entered into evidence." 573 S.W.3d at 228 n.3 (Tex. 2019).

In this case, Sierra concedes that some document was incorporated into the contract. Indeed, by making the agreement "subject to" the "Standard Terms and Conditions of Sale" that were available on request, the contract explicitly refers to another document. The question for us is whether the document titled "CDE General Conditions – June 2016" is the incorporated document. To this question, only the defendant presented evidence.

The evidence indicates that, before this lawsuit commenced, CDE was already identifying the 2016 addendum as the one mentioned in the contract. CDE sent Sierra the 2016 addendum as an attachment to a letter about the project's timeline. CDE's financial director attested that the 2016 addendum was the document referred to in the order acknowledgement. CDE also explained that the addendum was dated 2016, even though the contract was executed in 2017, because when the agreement was signed, the 2016 addendum was the most current version of CDE's terms and conditions. Moreover, as the district court found, the 2016 addendum contained the kind of terms and conditions one would expect to accompany the parties' agreement. We therefore agree that the acknowledgement of Sierra's order incorporated the 2016 addendum.

The result is the same even if Sierra never read the forum-selection clause. "[S]imply being unaware of a forum-selection clause does not make it invalid." *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 924 (Tex. 2009). "A

party who signs an agreement is presumed to know its contents. That includes documents specifically incorporated by reference." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (citation omitted). Sierra was on notice that a document containing CDE's terms and conditions existed. *See Int'l Profit Assocs.*, 286 S.W.3d at 923. Sierra's failure to request a copy of that document was at its own risk.

Because the forum-selection clause was incorporated into the contract and is binding, all the *forum non conveniens* private-interest factors weigh in CDE's favor of litigating the case in Northern Ireland. *See Barnett*, 831 F.3d at 300. There are no unusual circumstances that warrant retaining the litigation in Texas. *See id.* at 301.

Sierra has not shown that the district court abused its discretion in determining the convenience factors weighed in favor of litigating this case in Northern Ireland.

AFFIRMED.