# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2022

Lyle W. Cayce
Clerk

No. 21-50253

KENNETH NEWMAN, *individually and*, *on behalf of* ALL OTHERS
SIMILARLY SITUATED,

*Plaintiff—Appellee*,

CYPRESS ENVIRONMENTAL MANAGEMENT-TIR, L.L.C.,

*Intervenor—Appellee*,

*versus*

PLAINS ALL AMERICAN PIPELINE, L.P.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CV-244

## ON PETITION FOR REHEARING EN BANC

Before KING, COSTA, and WILLETT, *Circuit Judges*.

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel
rehearing (5TH CIR. R. 35 I.O.P.), the petition for panel rehearing is
DENIED. The petition for rehearing en banc is DENIED because, at the

request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fᴇᴅ. R. Aᴘᴘ. P. 35 and 5ᴛʜ Cɪʀ. R. 35).

In the en banc poll, 8 judges voted in favor of rehearing (Judges Jones, Smith, Elrod, Southwick, Ho, Duncan, Oldham, and Wilson), and 8 voted against rehearing (Chief Judge Richman, and Judges Stewart, Haynes, Graves, Higginson, Costa, Willett, and Engelhardt).

EDITH H. JONES, *Circuit Judge*, joined by SMITH and DUNCAN, *Circuit Judges*, dissenting from denial of en banc rehearing

With respect, the panel seriously misconstrues the law governing arbitration. We are now out-of-step with at least five other circuits (to say nothing of the Supreme Court) and appear to be in accord with none. The panel otherwise disregards our own precedents. This case should have been reheard en banc to harmonize our court with other circuits and to follow the Supreme Court. I respectfully dissent.

The panel opinion sets our court on a unique course concerning employees discontented with formal employment contracts that (a) envisioned their providing work on third-party projects and (b) contained full-throated AAA arbitration clauses. Contravening the Supreme Court in *Rent-A-Center, W., Inc. v. Jackson*[1] and numerous circuits, the panel opinion holds that, despite a delegation clause in the arbitration agreement, the "gateway question"—whether the plaintiff's dispute with the non-signatory project owner is arbitrable—was not for the arbitrator. But as an alternative, even if the question of arbitrability belonged to the federal court in the first instance, the panel should have concluded that Texas law would compel arbitration with the non-signatory project owner as a matter of intertwined claims estoppel. Each error deserves elaboration.

This case was filed by a plaintiff, Newman, who entered a written employment contract with an energy industry staffing company, Cypress, to perform work for a particular client, Plains. Cypress determined his rate of pay, cut his paychecks, handled Human Resources tasks, and prepared the parties' arbitration clause broadly covering all disputes arising from his employment. After he quit work with Cypress, Newman sued Plains—but not Cypress—for allegedly violating the FLSA.[2] Thus, he contrived to avoid his arbitration agreement with Cypress. If Newman eventually prevails against Plains, however, Cypress may well be on the hook for any unpaid overtime because of its affiliate's indemnity agreement with Plains. These arrangements, and a bevy of lawsuits like Newman's, have become common in the energy industry.

---

[1] 561 U.S. 63, 72-73, 130 S. Ct. 2772, 2779-80 (2010).

[2] Several other former Cypress employees opted in to Newman's suit pursuant to the FLSA.

# I.

Compelling arbitration requires a two-step inquiry. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "[T]he only issue at the first step is whether there is *any agreement* to arbitrate *any set of claims*." *Id*. at 202. Here, Newman agreed in broad terms according to the AAA to arbitrate claims arising out of his employment. The second step inquiry is "whether . . . the claim currently before the court[]" falls within the set of claims covered by the arbitration agreement. *Id*. But the court *cannot* reach that second question if the parties delegated it to an arbitrator in the first place. *Id*. at 201.

The Supreme Court tells us that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as *whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 70, 130 S. Ct. at 2777 (citations omitted) (emphasis added). Another gateway issue includes "whether an arbitration clause binds persons who did not sign it[.]" 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3569 n.53 (3d ed. Apr. 2022 update). A delegation provision consenting to arbitrate these issues "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70, 130 S. Ct. at 2777-78. "[S]o the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923 (1995) (emphasis in original). Consequently, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). "[*W*]*ho* decides whether a particular dispute is arbitrable[]" therefore precedes the question whether a dispute is arbitrable. *Peabody Holding Co. v. United Mine Workers*, 665 F.3d 96, 101 (4th Cir.2012) (emphasis in original). "If—but only if—the answer [to whether the parties delegated arbitrability] is *no*, the court must then proceed to determine on its own whether the parties' dispute falls within the scope of their agreement to arbitrate." *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013).

Based on these principles, it should have been easy to conclude that an arbitrator must decide whether Newman must arbitrate with Plains. The Newman-Cypress agreement "clearly and unmistakably"[3] delegates to the arbitrator the "power to rule on his or her own jurisdiction, including *any* objections with respect to the existence, scope or validity of the arbitration agreement."[4] Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures, R. 7(a) (Oct. 1, 2013), https://www.adr.org/sites/default/files/Commercial%20Rules.pdf. Of course "[a]ny [objections] means all [objections], because any means all." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) (internal quotation marks and citations omitted). And Newman's "employment [was] based on a specific project to be performed for a designated customer[,]" Plains. That Plains was not a formal party to the arbitration agreement does not rule it out from potential arbitration according to state-law interpretive principles. *See, e.g., Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624 (Tex. 2018) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739)).

But the panel decision never touches the delegation provision because it mistakenly assesses "enforceability between the parties [i.e. whether a non-signatory can enforce an arbitration agreement]. . . . as part of the first-step, formation question." In doing so, it modifies the first step to address whether a valid agreement exists *between these specific parties*. Yet, "whether [a non-signatory like Plains] can enforce the arbitration agreement against [a signatory like Newman] presents a question of arbitrability that [the signatory's] arbitration agreement delegated to an arbitrator." *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021). Courts can only assess the enforceability of a delegation clause by a non-signatory if the signatory "challenge[s] the delegation provision specifically[.]" *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779. Newman raised no such argument. Accordingly, "we must treat [the delegation provision] as valid under § 2 [of the FAA], and must enforce

---

[3] *See First Options of Chicago*, 514 U.S. at 944, 115 S. Ct. at 1924 (internal quotation marks and citations omitted) ("[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.").

[4] "[T]he express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases); *see also Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280 (5th Cir. 2019), *cert. granted*, 141 S. Ct. 107 (2020), and *cert. denied*, 141 S. Ct. 113 (2020) (citation omitted).

it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

Allowing Newman to avoid arbitrating the arbitrability of his claim against Plains contravenes not only *Rent-A-Center* but also this court's precedent, which explains that "we must first determine whether claims against [non-signatories are] clearly and unmistakably delegated to the arbitrator."[5] *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017). Issues concerning the parties' relationships and the types of claims in the underlying suit are subordinate to the exclusive focus at this juncture, which is simply "*who should decide* whether the parties have to arbitrate the merits." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (emphasis in original). *Brittania-U*, contrary to the panel's reasoning, mandates arbitration where, as here, the question of arbitrability was delegated to the arbitrator.[6]

---

[5] The panel opinion asserts that *Sherer v. Green Tree Servicing LLC* supports its reasoning. 548 F.3d 379 (5th Cir. 2008) (*per curiam*). There, a borrower brought various claims against his loan servicer; the servicer then sought to compel arbitration based on an agreement between the borrower and his lender. *Id.* at 380. The court first assessed "whether a valid agreement to arbitrate exist[d]" between the parties. *Id.* at 382-83. But there was no delegation clause, much less one governed by AAA Rules. *Sherer* is thus totally inapposite.

[6] Unlike the panel, lower courts in this circuit have adopted the core reasoning of *Brittania-U*. For example, in *Doucet v. Boardwalk Pipelines, L.P.*, "the worker chose to bring an FLSA claim against the company they were assigned to for work, not their employer[]" because they signed an arbitration agreement with the former. No. 4:20-CV-1793 2021 WL 3674975, *4 (S.D. Tex. Mar. 18, 2021). The magistrate judge found "that the scope of the delegation clause cover[ed] [the plaintiff's] claims[]" against the non-signatory defendant. *Id.* at *3. The district court then adopted that recommendation, ruling that "a valid arbitration clause exists with a delegation clause leaving the question of arbitrability to the arbitrator." No. 4:20-CV-1793, 2021 WL 5865704, *1 (Dec. 10, 2021).

Equally distressing, the panel's opinion puts this court out of step with at least five (if not more) of our sister circuits.[7] *Casa Arena Blanca LLC v. Rainwater*, 2022 WL 839800, *1 (10th Cir. Mar. 22, 2022) (unpublished); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 209-11 (2d Cir. 2005); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989).

Most notable is the panel decision's conflict with *Becker v. Delek US Energy, Inc.*, where an electrical inspector signed an employment agreement with Cypress that contained an arbitration clause. *See* 39 F.4th 351 (6th Cir. July 6, 2022). Cypress assigned the employee to work at the non-signatory defendant's facility. *Id*. at 354. The employee later sued the non-signatory defendant for FLSA violations. *Id*. Cypress intervened, and the district court denied its motion to compel arbitration along with one filed by the non-signatory defendant. *Id*. Sound familiar? The facts are identical to those at issue here. The Sixth Circuit reversed. The court first reiterated its understanding that "[w]hether a non-signatory can enforce a delegation clause is likewise a question of enforceability, not existence." *Id*. at 356. Because the employee did not "separate his analysis of the enforceability of the delegation provision from his analysis of the enforceability of the arbitration agreement as a whole[,]" the court enforced the delegation clause, "leaving the question whether [the employee could] enforce the arbitration agreement for an arbitrator to decide." *Id*.

The panel opinion diverged from *Becker* and numerous other courts without even acknowledging conflicting precedents. Because Newman clearly and unmistakably agreed to arbitrate arbitrability, the panel should have reversed and remanded with instructions to compel the arbitration of arbitrability. To conclude otherwise is manifest error. This decision is in accord with no other circuit (including our own) and renders delegation clauses second-class contracts in this circuit. So much for construing contracts "to give effect to the intent of the parties . . . so that every clause has some effect, and no clause is rendered meaningless." *REO Indus., Inc. v. Natural Gas Pipeline Co. of America*, 932 F.2d 447, 453 (5th Cir.1991) (citations omitted).

---

[7] Though the Seventh Circuit has not yet officially adopted this approach, at least one district court recently ruled that "the question of whether a purported non[-]signatory can enforce an arbitration

## II.

Even if Newman had not entered a contract that delegates arbitrability to the arbitrator (which he did), the panel should have interpreted Texas law to compel his arbitration with Plains based on a theory of intertwined claims estoppel.

"[A]llowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007). With this principle in mind, the Texas Supreme Court has explained, without expressly adopting the theory, that non-signatories can invoke intertwined claims estoppel to "successfully compel arbitration when (1) they have a 'close relationship' with a signatory to a contract with an arbitration agreement and (2) the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Jody James* Farms, 547 S.W.3d at 639 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). In other words, the theory applies where there is "'tight relatedness of the parties, contracts, and controversies.'" *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (quoting *JLM Industries, Inc. v. Stolt–Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004)).

In *Jody James Farms*, the Texas Supreme Court rejected intertwined claims estoppel on the facts because the contractual relationship between an insurer and an independent insurance agency was too tenuous. 547 S.W.3d at 640. That relationship, however, is much different from the contracts among Newman, Cypress, and Plains. Cypress hired Newman, and he agreed to arbitrate any and all disputes arising out of his employment. Critically, his "initial compensation [was] set forth in [an] Inspector Pay Offer[]" that listed "Plains –

agreement concerns a question of arbitrability and, thus, must be decided by the arbitrator." *Grabowski v. Platepass, LLC*, No. 20-CV-7003, 2021 WL 1962379, *4 (N.D. Ill. May 17, 2021) (collecting case discussed below). At least two district courts within the Third Circuit are in accord. *See Altenhofen v. Energy Transfer Partners, LP*, No. 20-CV-200, 2020 WL 7336082, *1 & n.1 (W.D. Pa. Dec. 14, 2020) (citation omitted) (holding that, where plaintiffs sued their employer's non-signatory client for FLSA violations, "[w]hether [the client defendant] may enforce the agreements, as a non-signatory, is a question reserved for arbitration," and that "Plaintiffs cannot avoid their arbitration agreements by omitting claims against [the actual employers] or any like 'staffing' company"); *see also Robertson v. Enbridge (U.S.) Inc.*, No. 19-CV-1080, 2020 WL 5751641, *5 (W.D. Pa. July 31, 2020) (citations omitted), *report and recommendation adopted*, No. 2:19-cv-1080, 2020 WL 5702419 (Sept. 24, 2020) ("[i]n light of *Henry Schein* and the clear language of the Arbitration Agreement, whether [a non-signatory defendant] may enforce the Arbitration Agreement against [signatory] Plaintiffs is a question for the arbitrator.").

Pipeline" as the client for which he would provide services.[8] That offer was both referenced within and attached to the "inspector employment agreement" he signed. The employment agreement also made clear that Plains could tell Newman that his "services [were] no longer required[.]" A reasonable person in Newman's position would have therefore understood from the outset that his employment was subject to any agreements between Cypress and Plains. Indeed, the Master Services Contract between Plains and Cypress's affiliate, Tulsa Inspection Resources, LLC ("TIR"), separately required the staffing company to "release, protect, indemnify, hold harmless, and defend [Plains] . . . from and against any and all . . . 'claims' for or relating to . . . any violation or alleged violation of state or federal law related to the payment, employment, or employment status of any of [Cypress's] employees."[9] Plains has since demanded indemnity from Cypress as TIR's affiliate. Plains therefore has a sufficiently close relationship with Cypress to compel Newman to arbitrate pursuant to intertwined claims estoppel. The panel points to no Texas authorities rejecting intertwined claims estoppel in these circumstances. In particular, and contrary to the panel decision, no Texas case says that corporate affiliation is necessary to apply intertwined claims estoppel.

Moreover, the panel declined to follow this court's remarkably similar decision that did apply intertwined claims estoppel. *See Trujillo v. Volt Management Corp.*, 846 F. App'x 233 (5th Cir. 2021). There, a staffing company employed the plaintiff to "work[] as an on-site coordinator at [her employer's client] and handled human resources functions for employees that [her employer] leased to [the client]." *Id.* at 234. She later sued both her employer and its client, and the employer moved to compel arbitration based on her signed agreement with it. *Id.* at 235. The district court compelled the plaintiff to arbitrate with her employer's client (a non-signatory) "because the claims and factual allegations raised by [the plaintiff] against [her employer] and [its client were] indistinguishable and her claims against [the client were] intimately founded in and intertwined with [the plaintiff's] underlying contract with [her employer]." *Id.* at 237 (internal quotation marks and citation

---

[8] Another Plaintiff averred that he "was financially dependent on Plains through TIR[]" and "relied on Plains as [his] joint employer . . . ."

[9] "Cypress employs inspectors who staff projects contracted by [TIR]." TIR, in turn," directs Cypress' employees to provide the inspection services to Plains." Both are controlled by Cypress Energy Partners, L.P. And all three entities are referenced on Newman's pay offer letter.

omitted). "The district court also found a tight relatedness of the parties, contracts, and controversies." *Id*. This court affirmed. *Id*.[10] As in *Trujillo*, but unlike *Jody James*, the business relationships here reflect a "close relationship."

The sound reasoning of *Trujillo* is confirmed by the facts of this case. As Plains explained, Newman's claims are "based on (1) the work [he] performed providing services for Plains under [his] Employment Agreement, as to which work [he] allege[s] Plains was [his] alleged "joint employer" (with Cypress); and (2) the payments [he] received for such work as part of [his] employment with Cypress under [his] Employment Agreement." Absent the signed employment agreement, Newman and the other plaintiffs "(1) would not have been employed by Cypress, (2) would not have provided the services to Plains which they now claim entitle them to overtime pay from Plains, and (3) would not have the ability to make FLSA claims against Plains." Finally, the case against Plains is heavily dependent on personnel records and witnesses of Cypress, which, to repeat, has an indemnification agreement with Plains. If these circumstances do not suggest that Newman's claims against Plains are sufficiently intertwined with his employment agreement with Cypress, it is hard to envision what would suffice. And above all, the point of compelling a non-party to arbitrate its dispute with the signatory to an arbitration agreement is to prevent the patent inequity of allowing the signatory to circumvent arbitration, to the obvious detriment of its counter-party signatory.

---

[10] "[U]npublished decisions, of course, are not binding on our court; they are, however, persuasive." *United States v. Sauseda*, 596 F.3d 279, 282 (5th Cir. 2010) (citations omitted). Thus, while the majority is not technically bound by *Trujillo*, it must not refuse to apply its reasoning and holding to similar facts without explanation. To avoid applying unpublished decisions based on flimsy distinctions does not honor their persuasive weight, which does conflict with our rules and published decisions.

In sum, the panel has misconstrued Texas law.[11]

**III.**

Newman signed an agreement to delegate arbitrability that referenced not only TIR and Cypress but also Plains. By virtue of the delegation, an arbitrator should have addressed arbitrability in the first instance. In the alternative, under Texas law intertwined claims estoppel requires arbitrating the merits because the relationship between Plains and Cypress is sufficiently close and Newman's FLSA claim is intimately intertwined with his employment contract.

I respectfully dissent.

---

[11] Even if Newman did not agree to delegate arbitrability to the arbitrator, there is a strong argument that Cypress should be able to compel as an aggrieved party under Section 4 of the FAA. 9 U.S.C. § 4. Cypress became a party after intervening as a matter of right in the district court. *See Donovan v. Oil, Chemical, ect. Local 4-23*, 718 F.2d 1341, 1350 (5th Cir. 1983), *cert. denied*, 466 U.S. 971, 104 S. Ct. (1984) (quotations and citations omitted). Cypress is aggrieved because, as the district court ruled, it "clearly shares a defense with Plains that is central to the main case—that Newman was properly classified as overtime exempt under the FLSA." Indeed, "any judgment that Newman was not properly paid requires examining Cypress's actions in determining his exemption." And "Newman's avoidance of his individual arbitration agreement could end up costing Cypress significant amounts through either . . . indemnity or through joint liability." The panel should have consolidated the appeals of the two defendants, and Cypress had good grounds to litigate its indemnity or other obligations by compelling Newman to arbitrate even though his claims are nominally only against Plains. The panel in *Newman v. Cypress Environmental Mgmt.*, an appeal from the same district court, erred by holding otherwise. 2022 WL 1114407 (5th Cir. Apr. 14, 2022) (*per curiam*).