# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2025

Lyle W. Cayce
Clerk

No. 22-20334

SHAWN MICHAEL FORD,

*Plaintiff—Appellee*,

*versus*

CONOCOPHILLIPS,

*Defendant—Appellant*,

BEDROCK PETROLEUM CONSULTANTS, L.L.C.; BEDROCK PC
1099, L.L.C.,

*Intervenor Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3099

_____

Before RICHMAN, HAYNES, and GRAVES, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:[*][1]

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] CATHARINA HAYNES, Circuit Judge, concurring in the judgment only.

No. 22-20334

A consulting firm contracted to provide personnel to ConocoPhillips. The consulting firm hired Shawn Michael Ford and contracted him out to ConocoPhillips. Ford sued ConocoPhillips for alleged Fair Labor Standards Act[2] violations. Ford did not sue the consulting firm. ConocoPhillips and the consulting firm moved to compel arbitration. The district court denied the motions. Because Ford's agreement with the consulting firm incorporated by reference an agreement with ConocoPhillips that mandated arbitration, Ford could be compelled to arbitrate his claims against ConocoPhillips. We vacate the district court's order denying arbitration and remand for proceedings consistent with this opinion.

**I**

ConocoPhillips is an oil and natural gas exploration and production company operating throughout the United States and worldwide. ConocoPhillips contracts with staffing companies to provide it with personnel to perform necessary work, including safety consultants and environment, health, and safety workers in several states. Ford is a safety consultant in the oil and gas industry. Intervenor-Appellants Bedrock PC 1099, LLC (Bedrock PC) and Bedrock Petroleum Consultants LLC (Bedrock Petroleum) (collectively, Bedrock) specialize in providing contract staff support to oil and gas industry customers, including ConocoPhillips. Bedrock Petroleum wholly owns 100% of the membership interest of Bedrock PC, the entity that regularly entered into agreements with independent contractors for assignments to Bedrock Petroleum's customers. Bedrock PC and Bedrock Petroleum are separate entities.

In 2018, Ford (as "Consultant") and Bedrock PC entered into a Master Consulting Agreement (MCA). The MCA stated that "Bedrock"

---

[2] 29 U.S.C. § 203.

2

No. 22-20334

refers to Bedrock PC.  The MCA defined "Bedrock Group" as including, among other individuals and entities, "Bedrock, its parent, subsidiaries, partners, [and] affiliates."

Article 2 of the MCA says:

> **2. Scope of Agreement.**  Consultant [Ford] is made aware that Bedrock has entered into a master services agreement, company agreement or work order (collectively "**MSA**") with Bedrock's customer ("**Company**").  If Consultant [Ford] is hired by Company, Consultant [Ford] agrees to the provisions of the MSA as Bedrock's contractor.  A copy of the relevant MSA shall be provided to Consultant [Ford] in the offices of Bedrock upon a reasonable request.  **The Consultant [Ford] assumes toward Bedrock all the obligations and responsibilities that Bedrock assumes toward the Company, as set forth in the relevant MSA, insofar as applicable, generally or specifically, to Consultant's [Ford's] work**.

Article 13 of the MCA also referenced "the relevant MSA" as being incorporated by reference:

> **13.  Entirety.**   This Agreement, together with any other documents incorporated by reference herein (explicitly including the relevant MSA) and/or executed therewith, is the sole and entire Agreement of the Parties with respect to the subject matter of this Agreement . . . .

In 2016, two years before Ford and Bedrock PC executed the MCA, ConocoPhillips and Bedrock Petroleum executed a Master Agreement for Support Services (MSA), wherein Bedrock Petroleum agreed to provide staffing services to ConocoPhillips through independent contractors.  The MSA defines "Contractor Group" to include affiliates of Bedrock

No. 22-20334

Petroleum.[3] Bedrock PC is therefore part of the "Contractor Group" under the MSA. The MSA denominates individuals like Ford as "Contractor Group Personnel."[4]

The MSA provides that Bedrock Petroleum is responsible for paying Contractor Group Personnel, which includes Ford, and for determining their exempt or non-exempt status and proper payment of overtime wages.[5] ConocoPhillips therefore does not pay Ford. Ford submitted invoices to Bedrock, and Bedrock paid him by direct deposits. Bedrock Petroleum agreed to indemnify ConocoPhillips against any actual or alleged

---

[3] The MSA provides:

> "**Contractor Group**" shall mean any or all of: (i) Contractor; (ii) its Affiliates; (iii) its subcontractors; and (iv) the respective agents of any of the entitles addressed in (i), (ii), and (iii) above; all the foregoing being "members of Contractor Group".

[4] The MSA provides:

> "**Contractor Group Personnel**" shall mean any or all of (i) officers and directors of, and permanent, temporary, part-time, and intermittent staff on the payrolls of, any of the members of Contractor Group; and (ii) any other individuals utilized by any member of Contractor Group to perform, oversee, direct, or accomplish its duties and obligations pursuant to this Agreement or Call-Off Orders, howsoever such individuals may be employed, contracted, or otherwise engaged.

[5] The MSA provides:

> 6.4. Contractor shall be fully responsible for the following in respect of Contractor Group Personnel assigned to perform Work:
>
> a. ensuring the proper and timely payment of wages, overtime wages, salaries, and all other remuneration . . .;
>
> b. determination and classification of exempt or non-exempt status and proper payment of overtime wages. . . .

No. 22-20334

misclassification of Contractor Personnel under the Fair Labor Standards Act (FLSA).[6]

Bedrock Petroleum also agreed in the MSA that all members of the Contractor Group (which included Bedrock PC as an affiliate) would comply with all applicable laws, and Bedrock Petroleum agreed to indemnify ConocoPhillips for the failure of any member of the Contractor Group to comply with any applicable law.[7]

_____

[6] The MSA provides:

> 6.8. **CONTRACTOR SHALL INDEMNIFY EACH OF THE MEMBERS OF COMPANY GROUP AND THEIR RESPECTIVE BENEFIT PLANS AND FIDUCIARIES FROM AND AGAINST ANY AND ALL CLAIMS, FINES, TAXES, AND OTHER LIABILITY (INCLUDING INTEREST AND PENALTIES) ARISING OUT OF OR RESULTING FROM:**
>
> . . .
>
> c. **ANY ALLEGED OR ACTUAL MISCLASSIFICATION OR MIS-DESIGNATION OF CONTRACTOR PERSONNEL AS (i) EXEMPT OR NON-EXEMPT UNDER THE FAIR LABOR STANDARDS ACT OF 1938; OR (ii) EMPLOYEES OF COMPANY.** . . .

[7] The MSA provides:

> 23.1. Contractor shall comply fully, and shall ensure that the other members of Contractor Group and Contractor Group Personnel shall comply fully, with all Applicable Laws . . . . **SUBJECT TO ARTICLE 18, CONTRACTOR SHALL INDEMNIFY EACH OF THE MEMBERS OF COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RESULTING FROM ANY ACTUAL OR ALLEGED FAILURE BY ANY OF THE MEMBERS OF CONTRACTOR GROUP OR BY ANY CONTRACTOR GROUP PERSONNEL TO COMPLY WITH ANY APPLICABLE LAWS.**

No. 22-20334

The MSA required Bedrock Petroleum to require Contractor Personnel, which would include Ford, to execute an arbitration agreement in a specified form that was attached as an exhibit to the MSA.[8] The arbitration agreement in the MCA between Ford and Bedrock PC is not identical to the form of the arbitration agreement attached to the ConocoPhillips MSA.

Ford alleges that he and other personnel regularly worked for ConocoPhillips for more than 40 hours each week and never received overtime compensation. They aver they did not receive overtime pay as required by the FLSA but instead were paid a daily rate. The putative class suing ConocoPhillips consists of "[a]ll safety consultants employed by or

---

[8] The MSA provides:

> 6.3. Contractor shall require each of the Contractor Personnel that are assigned to perform Work to execute an arbitration agreement in the form set out in the Exhibit entitled "Arbitration Agreement", as identified in Article 1.1 (the "**Arbitration Agreement**"). Contractor shall not assign or allow its subcontractors to assign any Contractor Personnel to perform Work unless and until such Contractor Personnel have executed the Arbitration Agreement. **NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS AGREEMENT, IF ANY CONTRACTOR PERSONNEL ASSIGNED BY CONTRACTOR OR ITS SUBCONTRACTORS TO PERFORM WORK HAVE NOT EXECUTED THE ARBITRATION AGREEMENT AS REQUIRED BY THIS ARTICLE 6.3, CONTRACTOR SHALL INDEMNIFY COMPANY FROM AND AGAINST ANY AND ALL CLAIMS BROUGHT BY SUCH CONTRACTOR PERSONNEL OR THEIR RESPECTIVE REPRESENTATIVES AGAINST COMPANY, REGARDLESS OF CAUSE AND EVEN IF THE CLAIMS RESULT FROM ANY ACTUAL OR ALLEGED BREACH OF DUTY OR OBLIGATION BY COMPANY OR THE SOLE OR CONCURRENT OR ACTIVE OR PASSIVE NEGLIGENCE, STRICT LIABILITY, OR WILLFUL MISCONDUCT OF COMPANY.**

performing work on behalf of ConocoPhillips classified as independent contractors and paid a day-rate without overtime during the past three years."

Ford filed his collective action complaint against ConocoPhillips, alleging that he and the members of the class were misclassified as independent contractors and were owed overtime compensation under the FLSA. Ford did not name Bedrock PC or Bedrock Petroleum as a defendant. Bedrock filed a Motion to Intervene under Federal Rule of Civil Procedure 24, seeking to protect their interests, including those under the arbitration provisions in the MCA and MSA. The district court granted Bedrock's Motion to Intervene. After Ford rejected ConocoPhillips's request to arbitrate, ConocoPhillips and Bedrock sought to compel arbitration. The district court denied the motions to arbitrate, and ConocoPhillips and Bedrock appealed.

## II

"We review the denial of a motion to compel arbitration de novo—as we do contract-interpretation issues generally."[9] "'[B]ackground principles of state contract law' govern 'who is *bound*' by an arbitration agreement," and "those principles can expand the arbitration agreement's enforceability beyond its signatory parties through 'traditional' doctrines."[10] Texas state law recognizes at least six doctrines under which a nonsignatory can move to

---

[9] *Newman v. Plains All Am. Pipeline, LP*, 23 F.4th 393, 398 (5th Cir. 2022) (footnote omitted).

[10] *Id.* at 401 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)).

No. 22-20334

compel arbitration.[11]   ConocoPhillips and Bedrock invoke two of these doctrines: incorporation by reference and third-party beneficiary.

Before addressing the applicability of those doctrines, we note that Bedrock urges us to revisit *Newman v. Plains All American Pipeline, LP*,[12] and adopt the view of the dissenting opinion and other circuits.[13]   However, "[t]his court's rule of orderliness prevents one panel from overruling the

---

[11] *See, e.g.*, *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms. Courts have also articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." (footnote omitted)); *see also Rachal v. Reitz*, 403 S.W.3d 840, 845 n.5 (Tex. 2013) ("We have noted that there are at least six theories in contract and agency law that may bind nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005))); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003) ("It is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others." (quoting J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bridge Too Far?*, 21 REV. LITIG. 593, 633 (2002))).

[12] 23 F.4th 393 (5th Cir. 2022).

[13] *See also Newman v. Plains All Am. Pipeline, LP*, 44 F.4th 251 (5th Cir. 2022) (JONES, J., joined by SMITH and DUNCAN, JJ., dissenting from the denial of rehearing en banc); *Becker v. Delek U.S. Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022); *Casa Arena Blanca LLC v. Rainwater*, 2022 WL 839800, at *5 (10th Cir. Mar. 22, 2022); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Apollo Comput. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989).

decision of a prior panel,"[14] and we decline to depart from this well-settled rule. While we do not revisit *Newman*, we do find it distinguishable. In *Newman*, the agreement incorporated by reference a pay letter, and that pay letter neither included an arbitration provision nor made the nonsignatory a third-party beneficiary of the agreement.[15] Here, as explained below, the incorporated-by-reference document itself includes an enforceable arbitration provision.

## III

We begin by discerning whether any documents were incorporated by reference in the MCA between Ford and Bedrock PC. "Under Texas law, a contract may incorporate an unsigned document by reference 'provided the document signed by the defendant plainly refers to another writing.'"[16] Here, the MCA "plainly refers to another writing."[17] The MCA clearly states that Ford has agreed to the provisions of another document,[18] and it expressly makes that document part of the agreement.[19]

---

[14] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 385 (5th Cir. 2011).

[15] *See Newman*, 23 F.4th at 402-03.

[16] *Sierra Frac Sand, LLC v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)).

[17] *Id.*

[18] The MCA provides in relevant part:

> **2. Scope of Agreement**. Consultant is made aware that Bedrock has entered into a master services agreement, company agreement or work order (collectively "**MSA**") with Bedrock's customer ("**Company**"). If consultant is hired by Company, Consultant agrees to the provisions of the MSA as Bedrock's contractor.

[19] *See ante at* 3 (quoting Article 13 of the MCA).

No. 22-20334

"After determining a document is incorporated by reference, a court must ensure that the document the party relies on for incorporation is in fact the document mentioned in the contract."[20]  We must determine, then, whether the document referred to in the MCA is the document ConocoPhillips and Bedrock invoke.

Bedrock and ConocoPhillips argue that the MSA referenced in the MCA was the agreement between Bedrock Petroleum and ConocoPhillips. They reason that "by entering into the [MCA], Ford agreed to and assumed the terms of the [MSA], including the arbitration obligation, which was an express condition to his Work assignment."

Ford argues that the MCA "defines 'Bedrock' as 'Bedrock PC 1099.' The [MSA] is not an agreement between Bedrock PC 1099 and Conoco. Instead, it is an agreement between Conoco and Bedrock Petroleum." According to Ford's reasoning, had the MCA stated, "Consultant is made aware that *Bedrock Petroleum* has entered into a master services agreement," then the MSA would have been incorporated by reference.  However, because the MCA stated that *Bedrock* had entered into a master services agreement, and because the MCA defined *Bedrock* as Bedrock PC 1099, then the only master services agreement that could be incorporated by reference would be one between Bedrock PC and ConocoPhillips.  According to Ford, the only master services agreement that he is aware of is between Bedrock Petroleum and ConocoPhillips.  We conclude that the evidence and settled law regarding contract construction do not support Ford's position.

_____

[20] *Sierra Frac Sand*, 960 F.3d at 204 (citing *IBM Corp. v. Lufkin Indus., Inc.*, 564 S.W.3d 15, 36-37 (Tex. App.—Tyler 2017), *aff'd in part, rev'd in part on other grounds sub nom.*, *IBM Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224 (Tex. 2019)).

First, it is elemental that a party to a contract is bound by documents incorporated by reference, even if the party does not review the incorporated document or know its contents.[21]  Ford's "failure to request a copy of th[e] document was at [his] own risk."[22]

In any event, the MCA recites that Ford had been "made aware" that Bedrock PC "has entered into a master service agreement, company agreement or work order (collectively '**MSA**') with Bedrock's customer ('**Company**')."  We must determine, then, whether Bedrock PC (as distinguished from Bedrock Petroleum) had actually entered into an agreement or work order as described in the MSC.  We conclude that it had.

The ConocoPhillips MSA defines "Contractor Group" to include Bedrock Petroleum's "Affiliates."[23]  The MSA expressly contemplated that Bedrock Petroleum affiliates (as part of the "Contractor Group") could "engage[]" and "utilize" individuals to "perform" or "accomplish" "its" (meaning the Bedrock Petroleum *affiliates's*) "duties and obligations pursuant to this Agreement or Call-Off Orders, howsoever such individuals may be employed, contracted, or otherwise engaged."[24]  The MSA thereby recognized that an affiliate of Bedrock Petroleum would have duties and obligations under the MSA if it provided personnel to perform work the MSA

---

[21] *See, e.g.*, *Sierra Frac Sand, LLC v. CDE Global Ltd.*, 960 F.3d 200, 204 (5th Cir. 2020) ("'A party who signs an agreement is presumed to know its contents.  That includes documents specifically incorporated by reference.'  Sierra was on notice that a document containing CDE's terms and conditions existed.  Sierra's failure to request a copy of that document was at its own risk." (internal citations omitted) (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008))).

[22] *See id.*

[23] *See supra* note 3.

[24] *See supra* note 4.

contemplated. The MSA further provided that "All Work shall be performed by Contractor Group Personnel." This is another express recognition that personnel engaged by entities other than Bedrock, namely members of the Contractor Group that included Bedrock Petroleum's affiliates, could provide personnel to perform the work called for under the MSA.

That is exactly what happened here. Bedrock PC engaged Ford to perform work under "a master service agreement, company agreement or work order (collectively "MSA") within the meaning of Article 2 of Ford's MCA.

Ford also agreed in Article 2 of the MCA that if he were hired by ConocoPhillips, he "agrees to the provisions of the MSA as Bedrock's [PC's] contractor."[25] As just explained, the ConocoPhillips MSA contemplated that Bedrock affiliates would contract for personnel such as Ford to do work under the MSA. Ford was Bedrock PC's "contractor" within the meaning of Article 2 of the Ford MCA with respect to the ConocoPhillips MSA.[26] We reject Ford's contention that the MCA referenced and expressly incorporated by reference a nonexistent document.

---

[25] The MCA provides in this regard:

> **2. <u>Scope of Agreement</u>**. Consultant [Ford] is made aware that Bedrock has entered into a master services agreement, company agreement or work order (collectively "**MSA**") with Bedrock's customer ("**Company**"). If Consultant [Ford] is hired by Company, Consultant [Ford] agrees to the provisions of the MSA as Bedrock's contractor. A copy of the relevant MSA shall be provided to Consultant [Ford] in the offices of Bedrock upon a reasonable request. . . .

[26] *See id.*

Accepting Ford's interpretation would read Article 2 and part of Article 13[27] out of the MCA. Such a result would be in tension with our "primary concern" of "ascertain[ing] the true intentions of the parties as expressed in the instrument," which requires us to "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[28]

We addressed a similar incorporation-by-reference issue recently in *Sierra Frac Sand, LLC v. CDE Global Ltd.*,[29] which also involved Texas contract law. There, the agreement between the parties, Sierra and CDE, was subject to "the 'Standard Terms and Conditions of Sale.'"[30] The question was "whether the document titled 'CDE General Conditions — June 2016' [was] the incorporated document."[31] As we explained, the evidence "indicate[d] that, before this lawsuit commenced, CDE was already identifying the 2016 addendum as the one mentioned in the contract. CDE sent Sierra the 2016 addendum as an attachment to a letter about the project's timeline. CDE's financial director attested that the 2016 addendum was the document referred to in the order acknowledgement."[32] Further, we pointed out that "the 2016 addendum contained the kind of

---

[27] The MCA provides:

> **13. <u>Entirety</u>.** This Agreement, together with any other documents incorporated by reference herein (explicitly including the relevant MSA) and/or executed therewith, is the sole and entire Agreement of the Parties with respect to the subject matter of this Agreement . . . .

[28] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

[29] 960 F.3d 200 (5th Cir. 2020).

[30] *Id.* at 204.

[31] *Id.*

[32] *Id.*

No. 22-20334

terms and conditions one would expect to accompany the parties' agreement."[33]   We determined that the document was incorporated by reference.[34]

We conclude that Ford's MCA with Bedrock PC incorporated the ConocoPhillips MSA by reference.

## IV

ConocoPhillips and Bedrock filed separate motions to compel arbitration.  ConocoPhillips asserted that it is entitled to compel arbitration under the arbitration provisions in its MSA with Bedrock and under the arbitration provisions in Ford's MCA with Bedrock PC.  Ford agreed in the arbitration provision in the MCA that he was required to arbitrate FSLA claims against Bedrock PC.[35]   Similarly, in the ConocoPhillips MSA

---

[33] *Id.*

[34] *Id.*

[35] The Ford MCA's arbitration terms provided in relevant part:

> **12. Dispute Resolution, Arbitration and Waiver of Class Claims Agreement.**
>
> a. **Disputes.**
>
> * * *
>
> ii. *Mandatory Arbitration for Covered Disputes.* Bedrock and Consultant agree that all Covered Disputes, as defined herein, arising out of or relating to any aspect of this Agreement, which may have occurred prior to or after entering into this Agreement, shall be submitted to binding arbitration administered by the JAMS in accordance with its Comprehensive Arbitration Rules and Procedures. Either Party may elect the Final Offer (or Baseball) Arbitration Option to the extent allowable by law. The term **"Covered Disputes"** shall include any claim, controversy, grievance, complaint, misunderstanding, or dispute arising under . . . the Fair Labor Standards Act of 1938. . . .

arbitration provisions at issue, FSLA claims are expressly listed as claims that are to be arbitrated.[36]

ConocoPhillips contends it is a third-party beneficiary of Ford's MCA with Bedrock PC. It separately contends it is entitled to enforce the arbitration provisions in its MSA under the doctrine of incorporation by reference. Because we agree with this latter contention, it is unnecessary to address the third-party beneficiary arguments.

We have already concluded above that Ford's MCA expressly incorporated the ConocoPhillips MSA by reference. We also discussed above that the MCA said that if Ford were "hired by [ConocoPhillips]," Ford "agrees to the provisions of the [ConocoPhillips] MSA as Bedrock's contractor." The MCA further provides that Ford "assume[d] toward Bedrock [PC] all the obligations and responsibilities that Bedrock [PC] assumes" toward ConocoPhillips.[37]

ConocoPhillips contends that pursuant to these provisions, Ford "agreed to and assumed the terms of the ConocoPhillips/Bedrock Petroleum MSA," including "the arbitration obligation," which ConocoPhillips asserts "was an express condition to his [Ford's] Work assignment," citing Article 6.3 of the MSA. ConocoPhillips maintains that Ford is bound by the terms of the arbitration form attached to the MSA as Exhibit H because

---

iii. ***Other Related Disputes***. The Parties agree that the requirement to arbitrate any dispute pursuant to Section 12.a herein shall also apply to any and all other claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any aspect of this Agreement (which may have occurred prior to or after entering into this Agreement) that may be otherwise be [sic] asserted against the other Party or its Group.

[36] *See post* at 16-17 (quoting Exhibit H to the MSA).

[37] *See ante* at 3 (quoting Article 2 of the MCA).

Article 6.3 required Bedrock to secure an executed arbitration agreement in the form of Exhibit H from all workers Bedrock provided to ConocoPhillips under the MSA. ConocoPhillips asserts that Ford is bound by the terms of Exhibit H to the MSA even though he did not sign a form identical to it. We agree.

Article 6 of the MSA is entitled "CONTRACTOR GROUP PERSONNEL." Ford was among those designated in the MSA as "Contractor Group Personnel." Article 6.3 of the MSA provides in pertinent part:

> 6.3. Contractor shall require each of the Contractor Personnel that are assigned to perform Work to execute an arbitration agreement in the form set out in the Exhibit entitled "Arbitration Agreement", as identified in Article 1.1 (the "**Arbitration Agreement**"). Contractor shall not assign or allow its subcontractors to assign any Contractor Personnel to perform Work unless and until such Contractor Personnel have executed the Arbitration Agreement.

Article 1.1 of the MSA provides: "This Agreement consists of this document (comprising the Preamble, the Recitals, and the Articles); and the following Exhibits attached hereto and made a part of this Agreement for all purposes:". Among the Exhibits identified was "Exhibit H Arbitration Agreement." Exhibit H, an arbitration agreement form, was attached to the MSA. It provides in relevant part:

> *[Name of Contractor]* and I agree that, in exchange for mutual consideration (including, but not limited to, my engagement and/ or continued engagement with *[Name of Contractor]* to perform services on a project for ConocoPhillips Company ("**ConocoPhillips**")), any and all disputes, claims, causes of action, or controversies arising out of or related to my performance of services for *[Name of Contractor]* on a project for ConocoPhillips ("**Claims**"), including any Claims against

16

or involving *[Name of Contractor]*, ConocoPhillips or any other party, except the Excluded Claims as listed below, will be resolved exclusively by final and binding arbitration before a panel of three (3) arbitrators.

Claims include, but are not limited to, claims of discrimination, harassment, or retaliation, and claims for benefits and compensation, whether based on local, state, or federal laws or regulations, or whether based in tort, contract, equity, statute, or other law. By way of example only, Claims include claims arising under . . . the Fair Labor Standards Act. . . .

Ford is bound by the terms of this part of the MSA because he agreed in the MCA he would be.

Independently, Ford also agreed in his MSC that he "**assumes toward Bedrock all the obligations and responsibilities that Bedrock assumes toward [ConocoPhillips], as set forth in the relevant MSA, insofar as applicable, generally or specifically, to Consultant's [Ford's] work**."[38] The terms of Exhibit H and of § 6.3 of the MSA is applicable both generally and specifically to a consultant's, such as Ford's, work for ConocoPhillips. Bedrock PA had a responsibility and obligation to have consultants like Ford, and Ford specifically, execute an arbitration agreement in the form specified in Exhibit H to the MSA. Ford assumed that responsibility and obligation under the MCA. He was obligated to consent to the arbitration agreement on the terms specifically set forth.

ConocoPhillips is entitled to compel arbitration of Ford's claims against it.

Bedrock's motion to compel seeks to require Ford to arbitrate his claims against ConocoPhillips. Based on the record before us, Bedrock did

---

[38] *See ante* at 3 (quoting Article 2 of the MCA).

not seek and is not seeking at this juncture to initiate arbitration proceedings with Ford to resolve any claim he has against Bedrock or any claim it has against him. Ford has asserted no claims against Bedrock in the present proceedings. While ConocoPhillips has taken the position in briefing that Bedrock has agreed to indemnify ConocoPhillips against certain claims, we are unaware of any claim ConocoPhillips has made against Bedrock regarding Ford or his claims against Conoco.

Accordingly, since ConocoPhillips is entitled to compel arbitration, we see no necessity to address Bedrock's motion to compel separately.

\*     \*     \*

For the foregoing reasons, we VACATE the district court's order denying ConocoPhillip's motion to compel arbitration and REMAND for proceedings consistent with this opinion.